**George D. COLLINS, Petitioner,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 83 Civ. 2361 (CES).**

United States District Court,
S.D. New York.

March 6, 1984.

George D. Collins, pro se.

John Santucci, Dist. Atty., Queens County, N.Y., Kew Gardens, N.Y., for respondent; Michael Connolly, Asst. Dist. Atty., Kew Gardens, N.Y., of counsel.

STEWART, District Judge:

Petitioner George "Danny" Collins seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that the state trial judge's charge to the jury on intent impermissibly shifted the burden of proof to him, and that a detective's testimony at trial contained hearsay which was highly prejudicial. Petitioner claims that the alleged errors were so violative of due process that he was denied a fair trial as guaranteed by the Fourteenth Amendment.

On the afternoon of May 9, 1977, three men attempted to hold up the jewelry store of Arthur and Ehrna Schwartz, located in Queens County, New York. Mr. Schwartz pulled out a licensed handgun and exchanged gunfire with one of the robbers, Robert Carter. The robbers then fled the store. Mr. Schwartz died shortly thereafter from gunshot wounds suffered in the exchange.

Petitioner was arrested on June 21, 1977 and charged with murder in the second degree, attempted robbery in the first degree and criminal possession of a weapon in the second degree. At his arraignment,

petitioner pled not guilty, and on March 19, 1979, the Queens County Supreme Court convicted him of all charges. He was sentenced to thirty-seven years to life. In subsequent proceedings, the Appellate Division affirmed without opinion, *People v. Collins,* 84 A.D.2d 689, 443 N.Y.S.2d 672 (2d Dept.1981), and the New York Court of Appeals denied leave to appeal. *People v. Collins,* 55 N.Y.2d 828, 447 N.Y.S.2d 1040, 432 N.E.2d 148 (1981).

■ Petitioner has properly exhausted available state remedies. The claims presented in the habeas petition are identical to those which were presented on appeal to the state courts. Petitioner, proceeding *pro se,* has relied extensively on the defense counsel's state appellate brief, and it is clear that the state courts were given a fair opportunity to pass upon petitioner's constitutional claims. *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc).

We first consider petitioner's claim that the judge's charge to the jury on intent violated the Supreme Court's holding in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), by improperly shifting the burden of proof on that issue to petitioner. We find this claim to be without merit.

The court's instruction to the jury on intent was as follows:

[Y]ou may infer that a person intends that which is the natural and necessary probable consequences of the act done by him, and unless the act was done under circumstances to preclude the existence of such intent, you have a right to find from the results an intention to effect it. (Tr. p. 359).

■ Unlike the charge in *Sandstrom,* which instructed the jury, "The law *presumes* that a person intends the ordinary consequences of his voluntary acts," 442 U.S. at 517, 99 S.Ct. at 2455, (emphasis added), the charge in this case instructed the jurors that they "may infer" and "have the right to find." Moreover, as opposed to petitioner's claim that the "unless" clause of the instruction required him to

come forward with evidence of circumstances negating intent, that clause has been held to ameliorate any burden-shifting meaning the preceding words could be misconstrued as having. *Rivera v. Coombe,* 683 F.2d 697, 701 (2d Cir.1981), *cert. denied,* 459 U.S. 1162, 103 S.Ct. 805, 74 L.Ed.2d 1007 (1983); *Mancuso v. Harris,* 677 F.2d 206, 210 (2d Cir.1982), *cert. denied,* 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1983); *Washington v. Harris,* 650 F.2d 447, 453 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982). In addition, almost immediately preceding the above instruction, the judge explicitly instructed the jury that the burden was on the state to prove the intent of the defendant beyond a reasonable doubt. *See Nelson v. Scully,* 672 F.2d 266 (2d Cir.1982) (entire charge must be considered). We conclude, therefore, that the jury could not have construed the above charge as either creating an irrebutable direction or a mandatory burden-shifting presumption as to the issue of intent— the due process infirmity present in the charge in *Sandstrom. See People v. Getch,* 50 N.Y.2d 456, 407 N.E.2d 425, 429 N.Y.S.2d 579 (1980) (similar charge found to pass constitutional muster).

As to petitioner's allegation that a detective's hearsay testimony was so prejudicial as to deprive him of a fair trial in violation of the Fourteenth Amendment, we find this claim a good deal closer and more troubling. However, in light of Mrs. Schwartz's in-court identification of petitioner as one of the robbers, we hold that the hearsay was not so prejudicial as to deprive petitioner of a fair trial. Accordingly, the petition is denied on this ground as well.

At petitioner's third trial—the first was declared a mistrial for unknown reasons; the second resulted in a hung jury—the State called as a witness Detective Lyons, the officer who investigated the robbery and who arrested petitioner. Part of Lyons' testimony concerned the sale of a camera to Mr. Schwartz approximately one week prior to the robbery. Mrs. Schwartz

had previously testified that she thought the robbers were the same persons who sold the camera to Mr. Schwartz a week earlier, though she was not present at the sale. (Tr. pp. 219–20). She had also testified that her husband recorded the names of the people from whom he bought merchandise in a ledger book that was used by the police to check for stolen property. The ledger book listed only Jimmy Johans as the seller of the camera. However, Lyons' testimony implied that both Johans' and petitioner's names were listed in the ledger.

Q Detective Lyons, during the course of your investigation, did you have occasion to examine a ledger book?

A Yes, sir, I did.

Q Did you have occasion to examine a camera?

A Yes, I did.

 \* \* \* \* \* \*

Q As a result of your investigation, did you ascertain who sold that camera to Mr. Schwartz?

A Yes, sir, I did.

Q Who sold that camera to Mr. Schwartz?

A Jimmy Johans and Danny Collins. (Tr. p. 276).

Defense counsel's objection to the testimony was overruled and a side bar conference was called; whereupon the prosecuting attorney attempted to explain the testimony:

Judge, if I may be heard. I fully expect [sic] the answer to that question to have been Jimmy Johans without Danny Collins. The ledger book does say Jimmy Johans. The officer's answer, Judge, "and Danny Collins" I would have to admit since I told him to stay away from the confession that was suppressed with respect to Danny Collins, would be heresay [sic]. I was surprised at the answer. I had no intention of eliciting it, but I have to assume that since the officer was told specifically to stay away from the confession, it was based upon heresay [sic].[1]

(Tr. pp. 278–79).

Defense counsel's motion for a mistrial was then denied and the judge attempted to cure the error by questioning Lyons.

THE COURT: Now officer, you had just made a statement when counsel asked you who sold the camera to Mr. Schwartz and you had stated Mr. Collins and Mr. Johans is that right?

THE WITNESS: That's correct.

THE COURT: Did you check the ledger book?

THE WITNESS: Yes, Sir.

THE COURT: With regard to the camera?

THE WITNESS: Yes, Sir, I did.

THE COURT: Does Mr. Collins' name appear in that ledger book?

THE WITNESS: No, Sir, it doesn't.

THE COURT: In other words, you are telling us you heard this from somewhere else?

THE WITNESS: Yes, Sir, I did.

THE COURT: That's heresay [sic], correct?

THE WITNESS: Yes.

THE COURT: You don't know from your own knowledge or from any ledger book that Mr. Collins had anything to do with it?

THE WITNESS: No, sir, I don't.

THE COURT: All right, go ahead, counsel.

MR. SILEO: Thank you, your Honor.

MR. BRETT: May I please have a side bar again?

THE COURT: Yes. Excuse me just a moment, ladies and gentlemen.

(Whereupon the following occurred at side bar out of the hearing of the jury.)

MR. BRETT: Your Honor, your effort[s] at curing the defect I feel are

---

1. A review of the entire trial record indicates that a "confession" by the petitioner was suppressed prior to trial. Since neither the state appellate briefs nor this petition specifically argue that the hearsay was the fruit of this confession, we do not analyze its admission into evidence in this light.

inadequate. The very phrasiology [sic] your Honor used only serves to emphasize the heresay [sic] nature of the officer's investigation and that is illustrated by your statement to the officer. In other words, you heard that from someplace else.

Now you said to the jury that his name doesn't appear in the ledger book. But you have also—

THE COURT: I also showed that.

MR. BRETT: That he has a source of information which says that this defendant had something to do with this sale of the camera.

THE COURT: Your exception is noted.

MR. BRETT: I repeat my request for a withdrawl [sic] of a juror and declaration of a mistrial.

THE COURT: Your motion is denied.

MR. BRETT: Exception.

THE COURT: Exception noted.

All right, counsel, continue.

(Tr. pp. 282–84).

Immediately thereafter, the prosecuting attorney was allowed to elicit, over defense counsel's objection, that Lyons had interviewed, among others, Jimmy Johans in the same month he had arrested petitioner. Johans was not called as a witness by either side and we have no information as to his availability.[2]

In his closing argument, defense counsel told the jury that the judge would instruct it to disregard Lyons' hearsay testimony, that it would be stricken from the record. (Tr. p. 331). However, at the conclusion of the trial, when defense counsel requested an instruction that the jury could not base its verdict on hearsay evidence the judge refused, stating that he had already taken care of the problem. (Tr. pp. 386–87). To make matters somewhat worse, the judge did instruct the jury to disregard any "arguments on the admissibility of evidence raised by counsel...." (Tr. p. 353).

Petitioner did not rest his state appeal nor this petition on the Sixth Amendment's confrontation clause, and accordingly we do not analyze his claim from this standpoint. Instead, we proceed on the theory advanced in the state courts and here that the hearsay was prejudicial error rising to the level of a due process violation.[3]

The hearsay rule functions to keep from the jury's consideration evidence which is viewed as inherently unreliable. *United States v. Mathis*, 559 F.2d 294, 298–99 (5th Cir.1977); *United States v. Lynch*, 499 F.2d 1011, 1022 (D.C.Cir.1974); 5 Wigmore, *Evidence* § 1362 (1974); *McCormick On Evidence* § 245 (E. Cleary 2d ed. 1972). In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court recognized the importance of the hearsay rule in ensuring that a defendant receives a fair trial.

> The hearsay rule, which has long been recognized and respected by virtually every state, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Id.* at 298.

▉ Generally, erroneous evidentiary rulings of a trial court will not rise to the level of constitutional error sufficient to implicate the "harmless beyond a reasonable doubt" standard usually applied when specific constitutional prescriptions are violated. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

---

**2.** Neither the record nor the briefs indicate the actual source, if any, of the hearsay. We mention Lyons' interview with Johans because this is admittedly a possible source to which the jury could have ascribed the hearsay.

**3.** One difference between Sixth Amendment and due process analysis is that the former may

warrant issuance of a writ of habeas corpus. "Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983) (emphasis in original). *See also Chambers v. Mississippi,* 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973); *Nettles v. Wainwright,* 677 F.2d 410, 415 (5th Cir. 1982); *Gale v. Harris,* 580 F.2d 52, 54 (2d Cir.1978) (per curiam), *cert. denied,* 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979); *Lipinski v. People of New York,* 557 F.2d 289, 292 (2d Cir.1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States ex rel. Serrano v. Smith,* 394 F.Supp. 391, 392 (S.D.N.Y.1975) (errors concerning admissibility of hearsay statements are not grounds for habeas relief absent a showing of deprivation of fundamental fairness). "The concept of 'fundamental fairness' is an elusive one." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). The reviewing court is required to decide "whether the improper statement was so violative of due process, and the concepts of justice which constitute due process," that the petitioner was denied a fair trial. *United States ex rel. Craft v. Lefevre,* 432 F.Supp. 93, 96 (S.D.N.Y.1977) (applying the "fundamental fairness" rule). Although the facts of this case are disturbing, we cannot find that the detective's hearsay testimony was so material to the outcome of the trial as to deprive petitioner of a fundamentally fair trial guaranteed by the Fourteenth Amendment.

We would have fewer difficulties in concluding that petitioner received a fair trial had the hearsay error been properly cured by corrective instructions. In this case the judge's curative efforts were clearly inadequate, particularly in view of defense counsel's strenuous objections. The trial transcript reveals that at no point during the trial did the judge explain to the jurors what hearsay evidence was or that they were not to consider hearsay in reaching a verdict. Nor did he order the hearsay evidence stricken from the record. Although the judge made it clear that petitioner's name did not appear in the ledger book, he might have left the jurors with the impression that Lyons had a source of information which linked petitioner to the scene of the crime.

The hearsay could have incriminated the petitioner as follows. Mrs. Schwartz testified that two of the robbers were in the store the morning of the robbery and indicated that they would return later that afternoon to sell Mr. Schwartz lenses to a Nikon camera. Mrs. Schwartz then testified that she thought that two of the robbers had sold Mr. Schwartz the camera one week earlier. Detective Lyons' hearsay testimony placed petitioner at the store one week prior to the robbery as one of the persons who sold Mr. Schwartz the camera. Aside from Mrs. Schwartz's identification, no other physical or testimonial evidence linked petitioner to the crime. Thus, looking at the evidence as a whole, the hearsay may have served to corroborate Mrs. Schwartz's identification of petitioner as one of the robbers.

■ On habeas review, our jurisdiction is limited to an inquiry as to whether petitioner's claim rises to the level of a constitutional error. *Baker v. Reid,* 482 F.Supp. 470, 471 (S.D.N.Y.1979). In light of the significant admissible evidence of petitioner's guilt, namely Mrs. Schwartz's in-court identification and testimony regarding the robbery, we find that the hearsay testimony was not so material as to deprive petitioner of a fair trial.

In response to the prosecuting attorney asking whether she could identify anyone in the courtroom as being one of the robbers, Mrs. Schwartz pointed to petitioner. She testified that she had waited on him for 20 to 30 minutes the morning of the robbery, and that during that time he was never further away from her than four or five feet. (Tr. pp. 173–75). Mrs. Schwartz then testified that she recognized him when he returned that afternoon to rob the store.

(Tr. p. 175). Although any eyewitness identification is amenable to doubt, Mrs. Schwartz's testimony was unshaken by rigorous cross-examination.[4]

We also note that the prejudicial effect of the hearsay was likely blunted for two reasons. First, since the hearsay was never ascribed to anyone in particular, it would have been difficult for the jury to accord it great weight. This is not a case, in other words, where the out of court statement was clearly ascribed to a declarant whose testimony would be highly probative, such as an eye witness, an accomplice or the petitioner himself. Indeed, the jury might have concluded that Mrs. Schwartz was the source of the information since she testified that she thought petitioner was at the store one week prior.

Second, although the judge erroneously did not tell the jury to disregard the hearsay, his effort at curing the error did tend to disparage the hearsay's probativeness. The judge elicited from Lyons an admission that the detective did not know from his own knowledge that petitioner "had anything to do with" selling a camera, and that the detective's testimony constituted "hearsay." While we cannot know for certain, it seems likely that the jury would have understood that "hearsay" is at least less trustworthy than in-court testimony, in part because even in common parlance "hearsay" is understood to connote something unreliable, *see Webster's Third New International Dictionary* (giving "rumor" as a possible synonym), and because the tenor of the judge's questioning seemed to suggest it.

The fact that the jury requested to have the testimony of both Mrs. Schwartz and Detective Lyons read back[5] and requested an explanation as to what constituted reasonable doubt suggests that its decision to convict was less than automatic. It is also true that a previous trial, where the hearsay apparently did not come in, resulted in a hung jury. However, in the context of the entire trial, we conclude that the admission of hearsay, by an unidentified declarant, and touching on an event which occurred one week prior to the robbery, did not deprive petitioner of a fair trial. *Cf. Orr v. Schaeffer,* 460 F.Supp. 964, 967 (S.D.N.Y.1978) (In the context of the entire trial, errors did not prejudice petitioner's due process rights). Accordingly, we deny the petition for a writ of habeas corpus.

SO ORDERED.

---

4. The judge also charged the jury at some length that an identification must be carefully weighed and should not be credited unless it was reliable beyond a reasonable doubt. (Tr. pp. 356–58).

5. After Mrs. Schwartz's testimony was read, the jury indicated it did not need to hear Lyons' testimony, and consequently this testimony was not read back.