**Robert S. JENKINS, Petitioner,**

v.

**Raymond BARA, Superintendent, etc., et al., Respondents.**

No. CV 86–4165.

United States District Court, E.D. New York.

June 30, 1987.

Robert S. Jenkins, N.Y., petitioner pro se.

Denis Dillon, Nassau Co. Dist. Atty. by Peter Shapiro, Mineola, N.Y., for respondents.

Robert Abrams, N.Y. State Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner *pro se* Robert Jenkins has applied to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

Jenkins was arrested on August 10, 1983 at approximately 3:30 a.m. on a residential street in Merrick, New York. On September 21, 1983, a Nassau County Grand Jury indicted petitioner on one count of burglary in the second degree, one count of possession of burglar's tools and one count of criminal possession of a controlled substance in the seventh degree.

On April 2, 1984, Jenkins was convicted on all counts after a jury trial. On May 9, 1984 he was adjudicated a prior violent felony offender and sentenced to an indeterminate term of 5 to 10 years of incarceration on the burglary conviction and to concurrent, determinate terms of one year of imprisonment on the remaining convictions.

On May 9, 1984, petitioner filed a notice of appeal from that judgment to the Appellate Division of the Supreme Court of New York, Second Department ("Appellate Division"). Petitioner perfected his appeal to the Appellate Division, arguing (1) that he had been seized in violation of his fourth amendment rights and that physical and testimonial evidence obtained as a result of that seizure should have been suppressed, (2) his confession resulted from the violation of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), and (3) the trial court committed several errors in its evidentiary rulings and in its instruction to the jury.

On November 15, 1985, the Appellate Division unanimously affirmed petitioner's conviction, without opinion.

In the instant request for a writ of habeas corpus, the petitioner submitted the brief his attorney prepared for his appeal to the Appellate Division, renewing the entire body of claims contained therein.

## I.

■ Petitioner first contends that his initial seizure by police was unreasonable and in violation of the fourth amendment and, as such, the evidence obtained as a result of the seizure should have been suppressed. This Court may not consider the merits of petitioner's argument. A federal court on habeas review may not grant relief on a claim that evidence introduced at trial was the product of an unconstitutional search or seizure where the state provided the petitioner with "an opportunity for full and fair litigation" of the fourth amendment claim. *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976); *McPhail v. Warden*, 707 F.2d 67, 69 (2d Cir.1983); *Gates v. Henderson*, 568 F.2d 830, 837 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Nelson v. Smith*, 618 F.Supp. 1186, 1191 (S.D.N.Y.1985). The Supreme Court in *Powell* held that the degree of fourth amendment protection provided by the suppression of illegally seized evidence, when weighed against the costs of such suppression to society, is not sufficient to warrant collateral review by a federal court of a search and seizure claim which has been previously decided by two or more judicial levels in the state system. *Powell*, 428 U.S. at 489–91, 96 S.Ct. 3050–51.

■ Jenkins was afforded a full and fair opportunity to litigate his fourth amendment claim in the New York State courts. The constitutionality of Jenkins's arrest was challenged at a pretrial suppression hearing pursuant to N.Y.Crim.Proc.Law § 710 and on appeal to the Appellate Division. Accordingly, Jenkins is not entitled to have the merits of his search-and-seizure claim reviewed by this Court.

## II.

Jenkins also contends that statements he made while in police custody were admitted into evidence at trial in violation of his privilege against self-incrimination. The statements, Jenkins argues, were a direct result of "subtle maneuvering" by the police officers which amounted to a violation of Jenkins's *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At approximately 3:30 a.m. on August 10, 1983, Jenkins, walking on a residential street in Merrick, New York, was confronted by Police Officer Sharp, who was responding to a call that a burglary had just taken place in that area. Officer Sharp, after observing Jenkins discard a dark object under a parked car, stopped Jenkins, and asked him his name and what he was doing. Jenkins's responses to Sharp's inquiries and Sharp's retrieval of a nail file shaped as a key and brown gloves from under the parked car, led to Jenkins's arrest for burglary and possession of burglar's tools.

Upon arriving at the station house and being informed of his *Miranda* rights, Jenkins indicated that he understood his rights and did not wish to speak. Despite Jenkins's assertion that he wished to remain silent, he was questioned about the burglary by Detective Zimmerman. During this interrogation Jenkins made certain inculpatory remarks before refusing to answer further questions. These statements were suppressed by the trial court as a violation of *Miranda*.

After this initial questioning had ceased, Jenkins, while waiting in the squad room for his arrest to be processed, overheard a broadcast over the police radio. The broadcast concerned the discovery of a suspicious automobile in the vicinity of the burglary for which Jenkins was arrested. Officer Sharp increased the radio's volume and soon thereafter another announcement

was transmitted identifying the petitioner as the person to whom the vehicle was registered. Sharp then turned to Jenkins and said "I think they found your car." A few minutes later, Jenkins asked to speak to Detective Zimmerman, whom he then told that he had information about drug deals in Roosevelt and that he wanted to speak with an assistant district attorney about "striking a deal." Zimmerman informed the petitioner that he could not speak to an assistant district attorney until 9:00 a.m. and made some remarks indicating that if he wanted to negotiate a deal he would first have to cooperate with respect to the burglary.

After some discussion and another reading of the *Miranda* warnings, Jenkins agreed to make a statement in which he admitted his criminal conduct regarding the burglary. Jenkins refused to sign the statement until he could speak to an assistant district attorney. This statement, which remained unsigned, was introduced into evidence at petitioner's trial upon the trial court's conclusion, following a suppression hearing, that it was voluntarily given.

Petitioner now argues that the trial court's ruling was in violation of his right against self-incrimination.

The Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) held that a criminal suspect's right to remain silent must be "scrupulously honored," such that the suspect maintains the ability to "cut off questioning" by the police. *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). The Supreme Court, in applying *Miranda,* has defined police interrogation to include not only express questioning but also its "functional equivalent," "which encompasses any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

Jenkins argues that Officer Sharp's conduct in turning up the volume and remarking about the broadcast constitutes interrogation in violation of Jenkins's decision to remain silent. Sharp, Jenkins contends, knew that his behavior was likely to elicit inculpatory remarks from Jenkins.

■ Initially, these facts seemed to present a close question as to whether police conduct in violation of Jenkins's *Miranda* rights had occurred. The dramatic nature of a suspect listening to developments on a police radio as information is being gathered against him would suggest an atmosphere of psychological pressure. On closer examination, however, it became apparent to this Court that no violation of *Miranda* had taken place. Stripped of the drama, what remains is a situation in which the suspect was made aware of certain incriminating evidence that the police had obtained and were intending to use against him. Revealing to a suspect evidence damaging to his defense after he has invoked his *Miranda* rights does not constitute compulsion. *United States v. Pheaster,* 544 F.2d 353 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977) (confession made while defendant was being transported to jail after agents recited the evidence they had obtained against him, including his fingerprints on a ransom note, held to be admissible despite the defendant's demand to see an attorney); *United States v. Hodge,* 487 F.2d 945 (5th Cir.1973) (a voluntary waiver of Miranda took place where defendant made incriminating statements following an explanation by law enforcement officials of the charges and the evidence against him, after he had invoked his right to counsel); *United States v. Davis,* 527 F.2d 1110 (9th Cir. 1975) (defendant's confession, obtained almost immediately after he indicated his desire to remain silent was admissible despite the conduct of FBI agents who asked if defendant wished to reconsider his position and showed the defendant a bank surveillance photograph of himself participating in the robbery). Jenkins was under no greater compulsion to speak than was the defendant in *Pheaster,* faced with the knowledge that his fingerprints were dis-

covered on a ransom note, or the defendant in *Davis,* who was confronted with a bank surveillance photograph of himself.

In addition to allowing post-*Miranda* discussion of evidence against a defendant, courts have held that conversations concerning the possibility of a defendant's cooperation, after a defendant has invoked his fifth amendment rights, do not constitute impermissible interrogation. *United States v. Guido,* 704 F.2d 675 (2d Cir.1983); *United States v. Thierman,* 678 F.2d 1331 (9th Cir.1982). Remarks concerning evidence unfavorable to the defendant or concerning the possibility of cooperating with a police investigation have been characterized as information that would provide a defendant with the opportunity to make an informed, intelligent waiver of a previously invoked right to remain silent, and therefore are "normally attendant to arrest and custody." *United States v. Crisco,* 725 F.2d 1228, 1232 (9th Cir.1984).

■ In order to constitute interrogation, police conduct "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis,* 446 U.S. at 300, 100 S.Ct. at 1689. In *Innis,* after the defendant was read his *Miranda* rights and requested an attorney, two police officers, while transporting the defendant to the police station, engaged in a conversation between themselves concerning a gun that was allegedly used in commission of the crime but which had not yet been recovered. One officer remarked: " 'there's a lot of handicapped children running around this area, and God forbid one of them might find a weapon with shells and they might hurt themselves.' " 446 U.S. at 294–95, 100 S.Ct. at 1686. The Supreme Court held that this remark did not warrant suppression of defendant's statement as the statement was not the "product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." The Court found that although the police "struck a responsive chord," the conversation "consisted of no more than a few offhand remarks." 446 U.S. at 303, 100 S.Ct. at 1691.

■ Although hearing the progress reports of a case that police are building is likely to elicit some emotion in the subject of that investigation, the conduct of the police after Jenkins's arrest was not "designed to elicit an incriminating response." *Guido,* 704 F.2d at 677 (citing *Innis,* 446 U.S. at 302 n. 7, 100 S.Ct. at 1690 n. 7). There is no evidence in the record that any trickery was used in regard to the broadcast or that Jenkins was placed in the squad room for the purpose of hearing it. Furthermore, once the broadcast was heard, Sharp's comment was little more than a repetition of the transmitted message. Sharp's comment may have been said in order to "bait" the petitioner, but it was no more designed to elicit an incriminating response than were the comments made by law enforcement officials while attempting to obtain a defendant's cooperation or informing a defendant of evidence that police have gathered which courts have consistently permitted.

Furthermore, it should be noted that a criminal suspect who invokes his *Miranda* rights is not precluded from later making a voluntary waiver of these rights. The *Miranda* requirement that a defendant's right to curtail police questioning be "scrupulousy honored," does not bar law enforcement officials from encouraging a suspect to make such a waiver, as long as it is "urged in a careful, noncoercive manner." *Wilson v. Henderson,* 584 F.2d 1185 (2d Cir.1978), *cert denied,* 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979) (citing *United States v. Collins,* 462 F.2d 792 (2d Cir.1972), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972)).

In the present case, Jenkins was merely sitting in the squad room waiting for his arrest to be processed. There was no rapid fire questioning and no persistent badgering. Jenkins heard the broadcast and independent of Sharp's comment was able to come to the conclusion that this evidence would be damaging to his defense. After a few moments' thought, Jenkins made a conscious decision to try to "strike a deal" with the prosecutor. When Detective Zimmerman indicated to Jenkins that in order

to cooperate with law enforcement agents he would need to give a full accounting with respect to the burglary, he chose to alter his strategy of remaining silent, and to give a statement to the police. Jenkins voluntarily gave the statement and no violation of *Miranda* took place.

## III.

Jenkins next challenges various rulings made at his trial in state court. The alleged errors Jenkins raises are: (1) the court's failure to charge the jury as to the necessity of independent evidence to corroborate a confession; (2) the court's failure to marshall the evidence properly when charging the jury; (3) evidentiary rulings which permitted the prosecution to introduce a quantity of cocaine and disallowed the admission of demonstrative evidence concerning the fit of a pair of gloves the petitioner tried on; and (4) the court's ruling after a *Sandoval* hearing to allow for the purpose of impeachment evidence of certain of the petitioner's prior convictions. *See People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

With respect to the alleged *Sandoval* errors, the prosecutor argues, in passing, that Jenkins failed to exhaust his state court remedies under *Daye v. Attorney General*, 696 F.2d 186 (2d Cir.1982) (*en banc*), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Although this issue is only being raised as to the *Sandoval* errors, the Court will address the exhaustion question as it applies to all the trial errors alleged by petitioner as a whole.

*Daye*, a loosening of the prior exhaustion standards, requires that the state court be adequately alerted to the constitutional nature of petitioner's claims while they are pending in the state system through one of four means:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d)

allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

696 F.2d at 194.

■ With respect to the corroboration of confession evidence, petitioner's challenge to the judge's charge was framed in such a way as to bring to mind a specific right protected by the constitution and thus was exhausted in the state courts. The Supreme Court has long required the corroboration of confession evidence to establish an essential element of a crime. *Warszower v. United States*, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876 (1941).

■ Although petitioner's remaining claims do not fit within any of the *Daye* categories, the Court declines to dismiss the petition on the basis of a failure to exhaust. Upon review of the pertinent case law applying *Daye*, this Court observed that all cases where a petition was dismissed on exhaustion grounds involved either a challenge in federal court to conduct that was never challenged in the state court or a challenge in the federal court to conduct that was previously challenged in state court, except that in state court the challenges were made on state law grounds and in federal court the challenges were on federal grounds, or at least couched in constitutional terms. *See e.g. Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir.1984); *Ayala v. Scully*, 640 F.Supp. 179, 180 (S.D. N.Y.1986); *Johnson v. Smith*, 564 F.Supp. 804, 805–06 (S.D.N.Y.1983). Here, however, the *pro se* petitioner merely refiled the brief his attorney submitted in state court. The alleged errors that were raised have no constitutional aspects and were merely challenged under state law. Although the claims as framed in the state court would not alert that court to a federal claim as required by *Daye*, *Daye* does not apply to a case where, as here, the petitioner is not asserting any new federal claim on habeas review. *See Collins v. Scully*, 582 F.Supp. 1100, 1104 (S.D.N.Y. 1984), *aff'd*, 755 F.2d 16 (2d Cir.1985).

■ If petitioner were now raising constitutional aspects relevant to one of his

previously asserted state claims, or if the Court were disposed to deciding one of petitioner's claims on an unraised but nevertheless existing constitutional theory, the Court would dismiss the entire petition for failure to exhaust so that the state court would have the first opportunity to decide petitioner's claim. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (where a petition contains both exhausted and unexhausted claims the entire petition must be dismissed). This, however, is not the case. New York State has already heard and ruled on all the claims Jenkins has raised with this Court. The *pro se* petitioner merely filed the brief that his attorney had submitted to the New York Appellate Division on direct appeal. In addition, there is no threat to comity where a federal court does not dismiss a petition on exhaustion grounds, but rather dismisses a claim as not being cognizable in a federal habeas court due to the claim's failure to reach constitutional magnitude. Furthermore, it would be futile, and a waste of judicial resources, to dismiss Jenkins's petition and expect him to go back to the state court to raise the identical grounds that were previously ruled on the theory that merely by virtue of the fact that Jenkins filed a petition for a writ of habeas corpus on these grounds, the grounds asserted must have some constitutional dimension which a state court will have to ascertain and rule on. *See Hawkins v. West*, 706 F.2d 437, 440 (2d Cir. 1983) (futility is an exception to exhaustion doctrine).

 Finding that the petitioner exhausted his state court remedies, the Court now turns to the merits of petitioner's claims concerning the alleged errors at trial. Petitioner's claim that the trial court failed to charge the jury as to the necessity of independent evidence to corroborate a confession is without factual merit. It is undisputed that corroboration by independent evidence is required where the government's proof of an essential element of the crime is the defendant's own confession. *Smith v. United States*, 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954); *United States v. Pennell*, 737 F.2d 521, 537

(6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Fasolino*, 586 F.2d 939, 941 (2d Cir.1978). Petitioner does not claim, however, that the evidence was insufficient to satisfy the corroboration requirement. He merely contends that a corroboration instruction was never rendered by the trial court. This is simply a misstatement of fact. The trial court charged the jury as follows:

> Finally, before you can consider the statement against the defendant, and even if you should find that the defendant admitted the crime in his statement, you must find that there was other independent evidence that the crime charged in the indictment was committed. Such independent evidence need not of itself establish the crime. It is sufficient if it reasonably tends to prove the crime. You must be satisfied beyond a reasonable doubt by the evidence outside of defendant's statement that the crime charged was, in fact, committed. (T. 457–58).

Thus petitioner's claim has no factual basis.

 Jenkins also challenges the portion of the trial judge's charge which marshalled for the jury the evidence presented in the case, arguing that the judge emphasized evidence which was damaging to Jenkins's defense. This issue was raised in the state court solely as a challenge under state procedural law (N.Y.Crim.Proc.Law § 300.10). Irrespective of the grounds raised in the state appeal, this claim does not reach constitutional dimensions to support the issuance of a writ of habeas corpus. Where a federal court on habeas review examines the conduct of a state court judge, the federal court must find the trial court's conduct to be substantially significant and substantially adverse to the defendant before it holds that the trial judge's conduct created an appearance of partiality which exceeded constitutional limitations. *Johnson v. Scully*, 727 F.2d 222, 226 (2d Cir.1984); *Daye v. Attorney General*, 712 F.2d 1566, 1570–71 (2d Cir. 1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct.

723, 79 L.Ed.2d 184 (1984). In *Johnson*, the Second Circuit agreed with the district court that the manner in which the state trial judge marshalled the evidence demonstrated his clear bias in favor of the prosecution's case. The Court, expressing concerns of federal-state comity, nonetheless reversed the district court's decision to grant the writ, concluding that the trial judge was not required to provide "equal time" to the defendant's case when marshalling the evidence presented, particularly where the majority of the testimony was presented by the prosecution, and that the trial judge's conduct did not exceed the bounds of constitutionality. *Id.* at 226–27. In the present case, this Court finds no indication of bias in the trial judge's statements marshalling the evidence or elsewhere in the record. Jenkins presented no defense and therefore the evidence available to be summarized was, for the most part, introduced by the prosecution. Thus, petitioner's claim appears to be devoid of merit and far from reaches constitutional magnitude.

Jenkins also raises the following objections to evidentiary rulings made by the trial judge: (1) the judge erred in allowing a quantity of cocaine to be introduced into evidence because the chain of custody was broken by allowing the cocaine to be locked up in an evidence locker which was accessible to other law enforcement personnel; (2) the judge, after permitting the defendant to try on a pair of gloves which were admitted into evidence, erroneously denied petitioner the right to show the jury at close range that the gloves did not properly fit; and (3) the judge improperly held, after a *Sandoval* hearing, that certain of Jenkins's prior convictions could be used to impeach him if he testified at trial.

 Federal review of a state court conviction is limited to errors of constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Mapp v. Warden, N.Y. State Corr. Inst.*, 531 F.2d 1167, 1173 (2d Cir.1976), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50

L.Ed.2d 592 (1976); *United States Ex Rel. Reid v. Dunham*, 481 F.Supp. 366, 369 (E.D.N.Y.1979). Generally, erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a writ of habeas corpus may be issued. *Nettles v. Wainwright*, 677 F.2d 410, 415 (5th Cir.1982); *Lipinski v. People of New York*, 557 F.2d 289, 292 (2d Cir.1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *Collins v. Scully*, 582 F.Supp. 1100, 1104–05 (S.D.N.Y.1984); *Mitchell v. Smith*, 481 F.Supp. 22, 25 (E.D.N.Y.1979), *aff'd*, 633 F.2d 1009 (2d Cir.1980), *cert. denied*, 499 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981). Nothing concerning the errors Jenkins alleges would exempt them from this general principle. Decisions concerning the foundation that must be laid for the chain of custody of a substance offered into evidence and the extent to which demonstrative evidence is permitted are both well within the sound discretion of the state trial judge, and a federal district court should not exercise supervisory review over such decisions.

Similarly, the admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude. *Gilmore v. Curry*, 523 F.Supp. 1205, 1208 (S.D.N.Y.1981); *Sams v. Warden, New York City House of Dentention*, 507 F.Supp. 141, 143 (S.D.N.Y.1981); *United States Ex Rel. Reid v. Dunham*, 481 F.Supp. 366, 369 (E.D.N.Y.1979); *see also People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974) (admitting evidence of a criminal defendant's prior convictions for the purpose of impeachment is within the discretion of the trial judge). This Court finds that the trial judge acted within the bounds of his discretion and in no way abridged Jenkins's constitutional rights.

Petitioner's evidentiary objections do not rise to the level of a constitutional deprivation and therefore cannot support the issuance of a writ of habeas corpus.

## IV.

For the above stated reasons, petitioner's request that a writ of habeas corpus be issued is denied.

SO ORDERED.