Donald WALKER, Petitioner,

v.

Hubert J. SPECKARD, Superintendent, Groveland Correctional Facility, Respondent.

No. 91–CV–262S.

United States District Court, W.D. New York.

Nov. 13, 1992.

Alan Birnholz, Amherst, N.Y., for petitioner.

Kevin M. Dillon, Dist. Atty., Erie County, Donna A. Milling, Asst. Dist. Atty., Buffalo, N.Y., for respondent.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings, including entry of final judgment. For the following reasons, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed in its entirety.

## BACKGROUND

During the early morning hours of September 2, 1987, Petitioner and Ronnie Simmons got into an altercation in the upstairs apartment of Seabra Cortez at 293 Pennsylvania Avenue in Buffalo, New York, which resulted in Petitioner stabbing Simmons (T. 47–55, 83–93, 112–120).[1]

On January 15, 1988, Petitioner was indicted by the Erie County Grand Jury for one count of assault in the second degree (a class "D" felony under New York Penal Law § 120.05(2)) and one count of criminal possession of a weapon (a class "A" misde-

---

1. "T" references are to pages of the trial transcript, filed with this Court as part of Petitioner's state court records.

meanor under Penal Law § 265.01(2)). Exh. C.[2]

A jury trial commenced on May 31, 1989, before Erie County Court Judge Rose LaMendola. The trial court first heard Petitioner's *Sandoval*[3] motion, and ruled that should Petitioner elect to testify at his trial he could be cross-examined about a 1977 conviction for first degree robbery, since "it does go to the issue of credibility ..." (T. 10). The trial court also allowed limited inquiry into a 1985 conviction for third degree assault and a 1986 conviction for attempted assault. The trial court disallowed any inquiry into a 1977 conviction for sexual assault (T. 10–11).

The testimony at trial revealed different versions of the September 2, 1987 incident. Ronnie Simmons testified that he lived in the lower apartment at 293 Pennsylvania Avenue, and on that date had gone upstairs to Seabra Cortez' apartment to confront Petitioner about the necklace. According to Simmons' testimony, what started as a discussion in the living room developed into a fist fight, which continued into the kitchen. Simmons pinned Petitioner against a kitchen cabinet, whereupon Petitioner admitted that he had the necklace. When Simmons stepped back, Petitioner grabbed a knife from the dishes that were drying on the kitchen sink and began swinging it at Simmons. While trying to swing back at Petitioner, Simmons felt the knife enter the left side of his abdominal area. Simmons testified that Petitioner put the knife under his jacket and ran out the door (T. 47–55).

Seabra Cortez testified that Petitioner and Simmons came to her apartment together and sat down in the living room. They started to talk, and then began fighting and "tussling" into the kitchen. Petitioner leaned back against the sink, and Simmons backed up. She saw Petitioner move toward Simmons with a knife in his hand, and she saw that Simmons had been "cut." She testified that Petitioner then left her apartment with the knife (T. 83–88).

Petitioner testified that Simmons had come to his home at 217 Hudson Street at approximately 11:45 p.m. on September 1, 1987 to discuss the necklace. They left together and went to Ms. Cortez' apartment in an attempt to "straighten out the matter." According to Petitioner, during their discussion in Cortez' living room, Simmons punched him in the face, breaking his dentures and his glasses and causing a cut under his eye. Petitioner testified that he attempted to restrain Simmons, and the struggle continued into the kitchen where Simmons was choking Petitioner against the kitchen sink while telling him "I'm going to kill you...." Petitioner grabbed the knife and stabbed Simmons. He testified that he threw the knife on the counter and walked out of the apartment (T. 115–20).

On June 1, 1988, the jury found Petitioner guilty on both counts of the indictment. Petitioner was sentenced to an indeterminate prison term of 3½ to 7 years on the second degree assault charge, to be served concurrently with a one-year sentence on the weapons charge.

Petitioner moved to vacate the judgment of conviction (Exh. J), and the trial court denied this motion (Exh. P). The Appellate Division denied leave to appeal this order (Exh. Y).

On December 21, 1990, the Appellate Division affirmed the judgment of conviction, finding that the trial court properly refused to charge the jury on the lesser included offense of third degree assault since Petitioner's own testimony negated any claim of reckless conduct. *People v. Walker*, 168 A.D.2d 983, 984, 564 N.Y.S.2d 929 (4th Dept.1990). The appellate court also found that Petitioner failed to object to the trial court's charge on intent and thus failed to preserve that issue for appeal. *Id.* Finally, the appellate court found that Petitioner's contention that the 12-year-old robbery conviction was too remote to be used on cross-examination could not be heard on

---

**2.** "Exh." references are to the exhibits filed with the Court as part of Petitioner's state court records.

**3.** *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

appeal since that issue was not raised in the *Sandoval* hearing. *Id.*

On February 21, 1991, the New York State Court of Appeals denied leave to appeal. 77 N.Y.2d 883, 568 N.Y.S.2d 926, 571 N.E.2d 96 (1991). Petitioner was incarcerated at Wende Correctional Facility when he filed the instant petition *pro se* on April 23, 1991. Item 1. An amended petition was filed on his behalf on January 29, 1992. Item 15.

The amended petition sets forth three grounds for habeas corpus relief: (1) improper admission of Petitioner's prior conviction for robbery; (2) improper jury charge on intent; and, (3) failure to charge the jury on the lesser included offense of assault in the third degree.

At oral argument on the petition, Petitioner's counsel advised the court that the second ground—improper jury charge on intent—had been withdrawn as a basis for habeas corpus relief. The petition is therefore amended to reflect that withdrawal, and only the first and third grounds will be considered.

## DISCUSSION

I. CROSS EXAMINATION ON PETITIONER'S PRIOR ROBBERY CONVICTION

Petitioner raises several arguments relating to the trial court's ruling allowing cross examination on his prior robbery conviction. Each of these arguments is addressed below.

A. *The Remoteness Of The Conviction.*

Petitioner argues that the robbery conviction, which occurred 12 years prior to the trial, is too remote to be used on cross examination. Section 470.05(2) of New York Criminal Procedure Code requires a party claiming error to object "at the time of such ruling or instruction or at any subsequent time when the court has an opportunity of effectively changing the same." Here, the Fourth Department refused to consider Petitioner's claim as to the remoteness of the robbery conviction

because he had not objected at trial. In affirming the conviction, the Appellate Division stated:

> Defendant's contention that a 12–year–old robbery conviction was too remote for use on cross-examination was not raised during the *Sandoval* hearing. Thus, that issue ... was not preserved, and ... has no merit. We decline to reach [this] unpreserved issue in the interest of justice.

168 A.D.2d at 984, 564 N.Y.S.2d 929 (citations omitted).

■ Where a state appellate court refuses to consider the merits of Petitioner's claims based on failure to preserve the point by objection at trial, then a federal court may not review those merits in a collateral habeas corpus proceeding, unless Petitioner can demonstrate both good cause for and actual prejudice resulting from his procedural noncompliance with the contemporaneous objection rule. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Rosenfeld v. Dunham,* 820 F.2d 52, 54 (2d Cir. 1987). This is referred to as the "procedural default" doctrine. On the other hand, if the state appellate court excuses the procedural default and considers the merits, then a federal court must also consider the merits of Petitioner's challenge when ruling on the availability of federal habeas relief. *Id.*

■ The question then before this Court is whether the Appellate Division considered the merits of Petitioner's remoteness claim. Reading the relevant language in the opinion, which is quoted above, I conclude that it did not. The opinion expressly states: "We decline to reach [this] unpreserved issue in the interest of justice." 168 A.D.2d at 984, 564 N.Y.S.2d 929. This is sufficient to satisfy the test set forth in *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), which requires, as a prerequisite to applying the procedural default rule, that the state court

"clearly and expressly" state that its judgment rests on a procedural flaw.

It is true, as Petitioner points out, that the opinion also states that the issue "has no merit." However, the opinion does not contain any discussion of the merits of the remoteness claim. Reading this language in the context of the paragraph, the Court appears only to be saying that the *argument* has no merit because the issue was not preserved. Thus, this case presents a far different situation than the state court decision reviewed in *Rosenfeld v. Dunham, supra.* There, the state court opinion stated that it considered all of "defendant's remaining contentions and find that they do not merit reversal." *People v. Rosenfeld,* 93 A.D.2d 872, 461 N.Y.S.2d 383 (2d Dep't.1983).

■ Having concluded that the procedural default doctrine applies, the next step is to determine if Petitioner has demonstrated good cause for failing to raise the remoteness issue at the *Sandoval* hearing. Petitioner has not met this burden. Counsel did object to use of the robbery conviction at the *Sandoval* hearing on the grounds of relevance and prejudice (T.7–10). No reason has been given for failure to object on remoteness grounds in addition. But, even if this ground had been raised and should have resulted in exclusion of the conviction on cross examination, "erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a writ of habeas corpus may be issued." *Jenkins v. Bara,* 663 F.Supp. 891, 899 (E.D.N.Y.1987).

### B. *The Similarity Between The Prior Conviction And The Crime Charged.*

Petitioner also argues that the trial court failed to consider each of the relevant factors set forth in *People v. Sandoval,* 34 N.Y.2d 371, 376–377, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). These issues include whether the prior conviction bears logically and reasonably on the issue of credibility, and the similarity between the prior criminal act and the crime charged. *People v.*

*Sandoval, supra,* 34 N.Y.2d at 376–78, 357 N.Y.S.2d 849, 314 N.E.2d 413. *Sandoval* held that:

> To the extent ... that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand. A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity.

*Id.* at 377, 357 N.Y.S.2d 849, 314 N.E.2d 413. As to theft offenses, *Sandoval* stated, "Commission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness (e.g., offenses involving theft or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, whenever committed." *Id.*

Petitioner argues that the trial court's "conclusory" finding that the 1977 robbery conviction went to the issue of credibility failed to take into account the similarity between the two crimes—a similarity which the trial court did not become fully aware of until after the *Sandoval* ruling. This is based on the fact that Petitioner's argument with Simmons began by Simmons accusing Petitioner of stealing a necklace belonging to Simmons. Petitioner therefore argues that this evidence impermissibly suggested to the jury Petitioner's propensity to commit criminal acts.

■ This argument is to no avail. Under *Sandoval* and other state court rulings, acts of individual dishonesty, such as offenses involving theft, have a material relevance to a defendant's credibility on the witness stand. 34 N.Y.2d at 377, 357 N.Y.S.2d 849, 314 N.E.2d 413; *see also People v. Rivera,* 101 A.D.2d 981, 982, 477 N.Y.S.2d 732 (3rd Dept.1984). Further-

more, Petitioner's 1977 robbery conviction was not so similar to the crime charged that the jury was unduly prejudiced. The jury heard only that Petitioner had been convicted of robbery in 1977, and that he had spent time in prison as a result (T. 121–22). No further inquiry into the underlying facts of that conviction took place.

■ Thus, the trial court properly allowed limited cross-examination on Petitioner's prior robbery conviction for an appropriate purpose under state law—i.e., to impeach Petitioner's credibility on the witness stand, and not to allow proof of bad character and propensity to commit the crime charged. *Cf. Mokone v. Kelly,* 680 F.Supp. 679, 682–83 (S.D.N.Y.1988). The admission of this evidence therefore did not deprive Petitioner of due process. *See Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

## II. THE JURY CHARGE

■ Petitioner also contends that the trial court denied him due process when it refused to charge the jury on the lesser included offense of assault in the third degree, a misdemeanor. Under New York Penal Law § 120.00(3), "[a] person is guilty of assault in the third degree when … [w]ith criminal negligence,[4] he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

Upon motion after trial, the trial court denied Petitioner's request to instruct the jury on the lesser included offense, finding "no … reasonable view of the evidence which would, under the circumstances of this case, justify the charge down" to third degree assault (T. 136). The Fourth Department affirmed, stating as follows:

> The court properly refused to charge assault in the third degree as a lesser included offense of assault in the second

degree. Viewing the evidence in the light most favorable to the defendant, we find that defendant's own testimony that he acted in self-defense negated any claim of reckless conduct, and that there was no reasonable view of the evidence that would support a finding that defendant committed assault in the third degree and not assault in the second degree.

*People v. Walker,* 168 A.D.2d at 984, 564 N.Y.S.2d 929.

Based on the record before it, this court finds no reason to disturb the state courts' ruling. It should be noted that at trial and on appeal, Petitioner claimed that he acted *recklessly,* rather than intentionally, in stabbing Simmons. *See* N.Y.Penal Law §§ 120.00(2); 120.05(4). His claim on the instant petition is that he acted with criminal *negligence.* This claim was not exhausted at the state court level.

But even if the merits of the claim are addressed, the claim must be rejected. The state court ruling on recklessness encompasses the negligence claim. There is no reasonable view of the evidence which would support a finding that Petitioner failed to perceive the substantial risk that he would cause physical injury to Simmons when he grabbed the knife and stabbed him with it.

The Fourth Department also found that risk unjustifiable, based on its finding that the prosecution failed to disprove Petitioner's justification defense. According to the Fourth Department, the evidence presented at trial regarding the argument between Petitioner and Simmons, the struggle that ensued, and the circumstances surrounding the stabbing was sufficient to disprove the defense of justification beyond a reason-

---

**4.** "Criminal negligence" is defined by New York Penal Law as follows:

A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that

such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

N.Y.Penal Law § 15.05(4).

able doubt. *See People v. Walker, supra,* 168 A.D.2d at 984, 564 N.Y.S.2d 929.

There is nothing in the record to support a jury finding that Petitioner failed to perceive a substantial and unjustifiable risk that he would cause physical injury to Simmons when he grabbed the knife and stabbed him. Accordingly, there is no merit to Petitioner's argument that he committed assault in the third degree rather than assault in the second degree. He was therefore not entitled to a jury charge including the lesser included offense, and was not denied due process when the trial court refused to give such a charge.

### CONCLUSION

Based on the foregoing, the petition is dismissed in its entirety.

SO ORDERED.