**Steven ROBINSON, Petitioner,**

v.

**Charles SCULLY, Superintendent Green Haven Correctional Facility and Robert Abraham, Attorney General of the State of New York, Respondents.**

**No. 87 Civ. 6196 (RWS).**

United States District Court, S.D. New York.

April 4, 1988.

Steven Robinson, pro se.

## MEMORANDUM OPINION

SWEET, District Judge.

*Pro se* petitioner Steven Robinson ("Robinson") has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 19, 1984, Robinson was convicted, after a jury trial, of first degree rape. On June 11, 1984 Robinson was sentenced as a second felony offender to an indeterminate term of imprisonment of from ten to twenty years. On November 12, 1985 the Appellate Division, First Department, affirmed without opinion Robinson's judgment of conviction, and leave to appeal to the New York Court of Appeals was denied on March 6, 1986.

In his petition, Robinson claims (1) that the prosecution failed to prove his guilt beyond a reasonable doubt, (2) that the trial court allegedly admitted into evidence at trial Robinson's arrest photograph, and (3) that the photo identification and lineup procedures used in his case were unnecessarily suggestive and tainted the in-court identification. Upon the findings and conclusions set forth below, the petition is dismissed.

*The Pretrial Suppression Hearing*

On April 10, 1984, a pretrial suppression hearing was held to determine the admissibility of any potential identification testimony. The testimony of one policeman and two detectives from the Bronx Sex Crimes Unit and two rape victims established the following record.

On May 19, 1983, Detective Charles Barbiere ("Barbiere") of the Bronx Sex Crimes Unit was assigned to investigate the rape of Stephanie Samuels ("Samuels") earlier that day by a man whom Samuels described as a medium build, male black with a fair complexion and short Afro hairstyle in his mid-twenties who wore a blue v-neck sweater, a grey shirt, and black pants and shoes. The following day, at the request of Barbiere, Samuels went to the precinct to view some photographs. Barbiere pulled out a file drawer containing approximately one hundred photographs of black men and asked Samuels "to go through it and see if there was anyone she knew." Samuels was not told, however, that the photographs were of people who had been arrested for sex crimes.

The men depicted in the photographs appeared to be in their early or late twenties, and each photograph depicted a front and side view of its subject. Barbiere said nothing to Samuels while she looked through the photographs. After looking at thirty to forty photographs, Samuels pulled out Robinson's photograph and informed the detective that she was positive that this was the man who had raped her. Petitioner's photograph was similar to the other photographs in the file and had the same front and side view as the other photographs.

On July 29, 1983, Detective Domonick Salvato ("Salvato") and Detective Richard Hartfield ("Hartfield") of the Bronx Sex Crime Unit, arrested petitioner at a housing project on 163rd Street. A member of the Bronx Task Force assembled a group of "fillers" who were similar to petitioner

in age, height and weight for the purpose of arranging a lineup. Shortly thereafter, Samuels went to the precinct to view a lineup, but she was not told that the police had apprehended the person who had raped her. Sharon Bolds ("Bolds"), a rape victim in another case, also went to the precinct to view a lineup. Samuels, Bolds and two other rape victims who had come to the precinct to view the lineup were placed in separate rooms. Samuels testified that she did not see or speak to any other witnesses who had come to the precinct to view the lineup and did not see or speak to any of the lineup "fillers." Before the lineup was conducted, Robinson was advised of his *Miranda* warnings. After being advised of his rights, Robinson did not request the assistance of an attorney. Samuels was then told that she was going to view six seated individuals, each with a number, and that if she recognized anyone, she should indicate the number of the person she recognized. Upon viewing the lineup, Samuels immediately identified Robinson, who was seated in the number four position, as the person who had raped her. Samuels observed that all of the men in the lineup were black, wore short Afro hairstyles, had medium complexions, and appeared to be in their mid-twenties.

Samuels then returned to the room where she had been waiting before viewing the lineup and remained there alone. While she was at the precinct to view the lineup, Samuels, who did not know Bolds, did not speak to Bolds, nor did she speak to anyone other than the detectives and her boyfriend. In addition, Salvato testified that he did not see any of the witnesses who had come to the precinct to view the lineup communicate with any of the witnesses who had not yet viewed the lineup.

At the conclusion of the hearing, Robinson's motion to suppress any in-court identification was denied. Subsequently, by written decision dated April 16, 1984, the trial judge specifically found that the photo identification and lineup procedures utilized by the police were not suggestive, prejudicial or tainted. The Court concluded that based upon the totality of the circumstances, the identification procedures utilized by the police did not create a substantial likelihood of irreparable misidentification by the complaining witnesses, Samuels and Bolds.

*The Trial*

At trial, Samuels testified to the events that occurred the night of her attack and identified Robinson as the man who had raped her. Dr. Valerie Burke testified that she had conducted a pelvic examination on Samuels a few hours after the attack which indicated recent intercourse and a tenderness of the cervix caused by forceful penetration during intercourse. Finally, detectives from the 48th precinct testified as to the facts incident to Robinson's arrest and the lineup identification. The defense presented no evidence at trial.

*The Sufficient Evidence Claim*

 Robinson claims that the prosecution failed to prove his guilt beyond a reasonable doubt on the grounds that the only witness against him was the complainant and that the prosecution failed to prove forcible compulsion. A claim that the verdict was against the weight of the evidence does not raise an issue of constitutional dimensions unless the record is so totally devoid of evidentiary support that a due process issue is raised. *Mapp v. Warden*, 531 F.2d 1167, 1173–74 n. 8 (2d Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed. 2d 592 (1976); *United States ex rel. Terry v. Henderson*, 462 F.2d 1125, 1131 (2d Cir. 1972). The issue as to whether the conviction satisfies due process is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A review of the record in this case leaves no question that a rational fact-finder could have found Robinson guilty beyond a reasonable doubt of the rape of Samuels.

At trial, Samuels described how Robinson followed her as she got off the "27" bus, grabbed her by the hair and then told her that he had a gun and would hurt her if she made any false moves. Samuels imme-

diately recognized Robinson as the individual who had stared into her face and followed her onto the bus moments earlier. Robinson then led Samuels on a ten block walk to a school yard where he pushed her into a fence, forced her to lie on the ground and raped her. Samuels had ample opportunity to observe Robinson both before and during the rape and form a mental image of him. Thus, she was able to provide a detailed description of Robinson to the police after the incident and to identify Robinson without hesitation when she viewed a lineup at the police station. Although Samuels was the only witness to identify Robinson as her assailant, her testimony was sufficient to establish his guilt beyond a reasonable doubt. *See United States v. Danzey,* 594 F.2d 905, 916 (2d Cir.1979), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 2179 (1978) (testimony of a single, uncorroborated eyewitness is generally sufficient to support conviction).

Moreover, Samuels' account of the rape was corroborated by the medical evidence in the case. Thus, the record is scarcely "devoid of evidentiary support" on the issues of forcible compulsion and Robinson's identification. *Cf. Howe v. Scully,* 582 F.Supp. 277, 279 (S.D.N.Y.1984). Upon this record a rational fact-finder could have found Robinson guilty of the rape beyond a reasonable doubt.

### The Photo Identification

■ Robinson contends that the photo identification procedure utilized by the police in this case was unnecessarily suggestive because Samuels was shown Bronx arrest photographs that only contained profile and front views of the subjects depicted in the photographs and that also had the date of arrest and other "numbers" on the photographs. As to these particulars, however, Robinson's photograph was similar to all of the other photographs in the file drawer. This court has held that the use of mug shots in an identification procedure is not unduly suggestive. *See United States v. Wai Ho Tsang,* 632 F.Supp. 1336, 1339–40 (S.D.N.Y.1986). Although in his petition Robinson claims that the detectives told Samuels she would be viewing photo-

graphs of sex offenders, this claim is not supported by the hearing transcript, which reveals that the police made no prejudicial references to the mug shots. *Cf. United States v. Oliver,* 626 F.2d 254, 263–64 (2d Cir.1980). All of the photographs that Samuels looked at were of black males between the ages of sixteen and thirty. Samuels testified that she did not notice if there was any writing on the chests of the men depicted in the photographs because she was looking at their faces. Robinson has not pointed to any reason why his photograph would have stood out from any of the other photographs in the file.

In sum, the hearing transcript fully supports the trial court's finding that the photo and lineup identification procedures were proper and were not suggestive, prejudicial or tainted. *See United States v. Leonardi,* 623 F.2d 746 (2d Cir.1980), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980). Robinson has not raised any other grounds for excluding the identification at trial. *See Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Finally, the record indicates that while the arrest photograph was received into evidence as an exhibit at the pretrial suppression hearing, it was not received in evidence as an exhibit at Robinson's trial. Consequently, there is no basis for Robinson's assertion that the jury had the opportunity at his trial to inspect the photograph and discover his prior arrest date which appears on the back of the photograph.

For the reasons set forth above, Robinson's petition fails to raise any issues of merit and is, therefore, dismissed. Further, because the petition is frivolous and presents no questions of substance for appellate review, a certificate of probable cause will not issue. *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). Finally, the court certifies that any appeal from this order *in forma pauperis* would be not be taken in good faith because such an appeal would be frivolous. 28 U.S.C.

§ 1915(a); *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.