**Jose AYALA, Petitioner,**

v.

**Charles HERNANDEZ, Superintendent of Taconic Correctional Facility, Robert Abrams, Attorney General of the State of New York, and Elizabeth Holtzman, District Attorney of Kings County, Respondents.**

**No. 87 Civ. 0981.**

United States District Court,
E.D. New York.

May 4, 1989.

---

Jose Ayala, Bedford Hills, N.Y., pro se.

Darrell Fields, Asst. Dist. Atty., Brooklyn, N.Y., for respondents.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Petitioner *pro se* Jose Ayala, an inmate of the Taconic Correctional Facility in Bedford Hills, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is denied in its entirety, with prejudice.

After a jury trial in the New York State Supreme Court, Kings County, petitioner was convicted of second degree burglary and petit larceny, and as a second violent felony offender was sentenced to concurrent terms of imprisonment of five to ten years and one year, respectively. The Appellate Division affirmed petitioner's conviction, *People v. Ayala*, 120 A.D.2d 600, 502 N.Y.S.2d 75 (2d Dep't 1986), and the New York Court of Appeals denied leave to appeal, *People v. Ayala*, 68 N.Y.2d 755, 506 N.Y.S.2d 1042, 497 N.E.2d 712 (1986).

In seeking habeas relief, petitioner alleges that his due process rights were violated by:

1) the trial court's interjection of itself into the proceedings and the prosecutor's summation remarks suggesting that petitioner fabricated his testimony;

2) the trial court's admission of police testimony tending to "bolster" the victim's identification testimony, coupled with the court's denial of a requested instruction on how to evaluate the victim's identification testimony; and

3) the trial court's refusal to limit the prosecution's cross-examination of petitioner with respect to previous similar crimes.

## FACTS

At about 3:45 p.m. on November 2, 1982, Ms. Patricia Olszewski was folding clothes and watching a soap opera on television in the living room of her house at 135 Bayard Street in Brooklyn when she heard someone open her front storm door. Looking up at the dining room mirror on the opposite wall, she saw the reflection of a man standing in her front hallway about thirty feet away. Ms. Olszewski saw him bend down and remove something, but could not see what he had taken.

After observing the intruder for more than five seconds, Ms. Olszewski got up and ran into the hallway, but he had already fled. Noticing that her AM–FM radio/cassette player was missing from the hallway, Ms. Olszewski ran out her front door and saw a man running away with her radio.

Ms. Olszewski, a member of the 94th Precinct's Civilian Observation Patrol, dashed back into the house, grabbed a pair of handcuffs, and without stopping to don her shoes, set off in hot pursuit of the man with the radio. She stayed close behind him as he turned left in front of the house on Manhattan Avenue and then right on Meeker Avenue, at which point he flung out his arm and knocked her to the ground, which was littered with broken glass. As she fell, sustaining injuries, she noticed a passing police car. She hailed the car and told the officers that the fleeing man had just robbed her house. Both she and the police gave chase. As the fleeing man passed beneath the Brooklyn Queens Expressway between Manhattan Avenue and Leonard Street, he threw the radio to the ground. After several more minutes of hot pursuit, the police apprehended him. Subsequently, the police recovered the radio, which was missing its handle and battery cover.

At trial, petitioner testified that he had never entered Ms. Olszewski's house, and that he had purchased the radio from a stranger just before Ms. Olszewski began to pursue him.

## CLAIM ONE: JUDICIAL AND PROSECUTORIAL MISCONDUCT

█ The State argues that petitioner has not exhausted available state remedies with respect to petitioner's claims of judicial and prosecutorial misconduct. The court disagrees. "Obviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts." *Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir.1982) (en banc). Petitioner's Appellate Division brief cited "U.S. CONST. Amend. XIV" in support of his claims of judicial and prosecutorial misconduct and thereby "fairly presented" those claims to the state court. Petitioner's

State Appellate Brief ["Pet.App.Br."] at 1.[1]

■ However, the Appellate Division held that petitioner's claim of prosecutorial misconduct, based on summation remarks implying that petitioner fabricated his testimony after listening to the State's witnesses, was procedurally barred because petitioner's counsel failed to request a curative instruction after the trial court sustained his objection. *People v. Ayala*, 120 A.D.2d 600, 601, 502 N.Y.S.2d 75, 76 (2d Dep't 1986) (citing *People v. Medina*, 53 N.Y.2d 951, 953, 441 N.Y.S.2d 442, 443, 424 N.E.2d 276, 277 (1981)).

Where, as here, the last state court to review the conviction expressly states, as an independent basis for its denial of relief, that the claim is procedurally barred under state law, federal habeas review is also barred unless

(1) the state does not "strictly or regularly follow[ ]" its own procedural rule, *Johnson v. Mississippi*, — U.S. —, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (citation omitted); or

(2) petitioner can show "cause" for his procedural default and "prejudice attributable thereto," *Harris v. Reed*, — U.S. —, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1988) (citation omitted); or

(3) petitioner can show that his is the "extraordinary case" in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986). *See generally Harris*, 109 S.Ct. at 1042–43. Petitioner has not even alleged that he meets any of these exceptions, and his prosecutorial misconduct claim therefore is procedurally barred.

■ Petitioner also claims that the trial court's conduct deprived him of a fair trial. Petitioner complains of two incidents.[2]

The first incident occurred at the close of Ms. Olszewski's direct testimony, when the trial court reminded the prosecutor to offer the stolen radio into evidence. TR 68. Petitioner claims that the trial court thereby "took over the prosecutorial function."

The second incident occurred when petitioner's counsel attempted to impeach Ms. Olszewski's credibility by showing that her testimony that petitioner pushed her to the ground contradicted her prior statement to the police that she "fell." The court intervened in an apparent effort to rehabilitate Ms. Olszewski's credibility:

Q   Now isn't it true that you fell while you were chasing Mr. Ayala and that is how you sustained these injuries?

A   Yes.

Q   And did you tell Police Officer Lara that you fell while you were chasing this person?

MS. LUCIBELLO: Objection.

THE COURT: Overruled.

Q   And that is how you were injured?

A   Oh, yeah, yeah.

Q   You told him you fell?

A   Yes.

Q   And now you are telling us here today that you were pushed; isn't that right?

THE COURT: No, she didn't say that. She said her injuries occurred as she fell. She also said she was pushed. But she didn't say her injuries occurred when she was pushed.

Q   Did Mr. Ayala push you while you were running?

A   Yes.

---

**1.** Moreover, even if petitioner had not cited the Fourteenth Amendment to the United States Constitution, his claims of judicial and prosecutorial misconduct were "fairly presented" to the state court by his citation of *People v. De Jesus*, 42 N.Y.2d 519, 399 N.Y.S.2d 196, 369 N.E.2d 752 (1977) (judicial misconduct denied defendant fair trial) and *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975) (prosecutorial misconduct violated Fifth Amendment). *See Daye*, 696 F.2d at 195–96 (Daye's citation of *De Jesus* and *Crimmins* in his state appellate brief sufficed to exhaust his constitutional claims).

**2.** Because the last state court to review petitioner's conviction rejected this claim on the merits and did not plainly state that it relied on petitioner's failure to object as an alternative basis for its holding, *Ayala*, 120 A.D.2d at 601, 502 N.Y.S.2d at 76, the claim is not procedurally barred for purposes of federal habeas review. *Harris v. Reed, supra.*

Q Did you tell the officer that he pushed you while you were running?

A I don't remember at that point. TR 85–86.

The court finds that neither of these incidents comes close to warranting habeas relief. As stated by the Second Circuit in *Daye v. Attorney General,* 712 F.2d 1566, 1572 (2d Cir.1983), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984):

> A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.

If these two incidents had any adverse effect on defendant at all, it certainly was not "substantial" enough to impair the functioning of the jury or create the appearance of bias.[3]

The trial court's reminder to offer the radio into evidence simply could not have been "adverse to the defendant to a substantial degree." First, the prosecutor's failure to offer the radio surely was inadvertent, and probably would have been rectified prior to Ms. Olszewski's leaving the stand, or at least prior to the end of the State's direct case. Second, immediately after Ms. Olszewski identified the radio as hers, the trial court invited defense counsel to "voir dire" Ms. Olszewski on her identification of the radio, which defense counsel then proceeded to do. TR 69. Third, the radio was properly offered into evidence, and the court did not comment improperly upon its probative value.[4] Fourth and finally, the court later instructed the jury that it was the sole judge of the facts and that it should not consider the court as having any opinion regarding the facts.

TR 180. This instruction, coupled with the overall strength of the State's case against petitioner, persuades the court that this is not one of those "extraordinary instance[s]" in which a state judge's conduct denied a habeas petitioner his right to a fair trial. *Minor v. Harris,* 556 F.Supp. 1371, 1378 (S.D.N.Y.), *aff'd without opinion,* 742 F.2d 1430 (2d Cir.1983).

The trial court's summary of Ms. Olszewski's testimony, while ill-advised and confusing, was essentially accurate and provides no basis for granting the petition. *See Gayle v. Scully,* 779 F.2d 802, 811 (2d Cir.1985), *cert. denied,* 479 U.S. 838, 107 S.Ct. 139, 93 L.Ed.2d 82 (1986) (state trial court has the "right, indeed frequently even the duty" to intervene at trial "in an effort to clarify and to avoid confusion"; rejecting habeas petition based on trial court misconduct); *Minor,* 556 F.Supp. at 1381 (state trial court interjections unobjectionable where "necessary to clarify testimony and assist the jury in understanding the evidence") (citations omitted); *Jones v. Smith,* No. 79 Civ. 3856 (S.D.N.Y. Oct. 22, 1979) (LEXIS, Genfed library, Dist. file) (state trial judge is not "a mere moderator," but rather, "has a duty to clarify ambiguous questions and testimony for the jury"); *Leon v. Kuhlmann,* 443 F.Supp. 50, 61 (S.D.N.Y.1977) (state court judge "may comment on the evidence, for the jury's benefit, provided that his remarks are fair and impartial and that the jury's right to determine issues of fact remains untrammeled").

Moreover, courts in this Circuit have denied habeas relief in cases far more troublesome than this. In *Johnson v. Scully,* 727 F.2d 222 (1984), the Second Circuit rejected a claim for § 2254 relief based in part upon the trial judge's biased marshalling of the evidence in his charge to the

---

**3.** Far more troubling in this respect was the trial court's penchant for "sustaining" objections which the State had not made. The trial court did this fifteen times (TR 46 (twice), 47, 70, 73, 77, 80, 83, 90, 100, 106, 135 (twice), 154 (twice)), and also "sustained" one objection the defense did not make. TR 119. While this behavior ran a risk of creating the appearance of bias, petitioner has not raised it as a ground for relief, and even if he had, habeas relief would not be warranted, given the extremely restrictive view which the Second Circuit has taken regarding habeas review of state trial court misconduct. *See* discussion, *infra.*

**4.** The court also referred to the radio twice in its jury charge, but again offered no opinion as to its probative value. TR 186–87, 196.

jury, even though "the trial judge could surely have found more neutral ways to set forth the prosecution and defense contentions." *Id.*, 727 F.2d at 227.[5] *See also Minor*, 556 F.Supp. at 1386 (state trial court interjections were harmless error although "unfair to a degree that at least approached a due process violation").

Accordingly, petitioner's claim based on judicial misconduct is denied, with prejudice.

CLAIM TWO: IMPROPER "BOLSTERING" OF IDENTIFICATION TESTIMONY COUPLED WITH FAILURE TO INSTRUCT JURY ON HOW TO EVALUATE IDENTIFICATION TESTIMONY

█ Petitioner asserts that he was denied due process when the trial court permitted a police officer to give testimony which "bolstered" Ms. Olszewski's identification of petitioner:

Q  And at approximately 3:55 P.M. on [November 2, 1982], did anything happen?

A  At approximately 3:55 I had to take official police action.

Q  What did you observe prior to taking any official police action?

A  Prior to taking action, I was riding on Meeker Avenue in the radio car, and I observed a female running, and a male running in front of her.

Said female was yelling and screaming.

Q  What was she saying?

MR. BAUM: Objection.

THE COURT: Overruled.

Q  What was she saying, officer, as she was running?

A  She was yelling, "That man robbed me."

MR. BAUM: Objection, Judge.

THE COURT: Overruled.

TR 30.

Subsequently, the trial court denied defendant's mistrial motion based upon this testimony.  TR 57.

Petitioner asserts that admission of this testimony violated the rule in *People v. Trowbridge*, 305 N.Y. 471, 113 N.E.2d 841 (1953), which held that it was reversible error for a police officer to "bolster" a crime victim's identification testimony by testifying that he saw the victim identify the defendant.[6]

Petitioner has failed to state a federal constitutional claim.  "The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution.  It is at most a New York State rule or policy, derived from *People v. Trowbridge* ... Violation of [the *Trowbridge* rule, as is so with regard to many such state court rules, does not rise to a constitutional level." *Snow v. Reid*, 619 F.Supp. 579, 582 (S.D.N.Y.1985); *accord Orr v. Schaeffer*, 460 F.Supp. 964, 967 (S.D.N.Y.1978) ("[T]his Circuit has never regarded the practice [of bolstering] as inimical to trial fairness").

█ Petitioner claims that the harmful effect of the trial court's *Trowbridge* ruling was exacerbated by the court's refusal to instruct the jury on how to evaluate Ms. Olszewski's identification testimony.  The requested instruction would have required the jury to consider the lighting in Ms. Olszewski's house and her opportunity to view the intruder.  Pet.App.Br. at 9; TR

---

**5.** According to the district court which initially granted the writ in *Johnson*, the state trial court's jury charge "contained fulsome summations of the prosecution's 'contention' and evidence with but barest reference to petitioners' contentions and testimony, and then in a manner which reflected the judge's low opinion of their character and defenses." *Johnson v. Scully*, 563 F.Supp. 851, 870 (E.D.N.Y.1983), *rev'd*, 727 F.2d 222 (2d Cir.1984).  The transcript excerpts contained in the district court's opinion certainly bear out that characterization. *Id.*, 563 F.Supp. at 870–73.

**6.** *Trowbridge* has been overruled by N.Y.Crim. Proc.Law § 60.25 (McKinney 1981 & Supp. 1989), which "permit[s] the fact of the prior identification to be established by the testimony of another person when the identifying witness is unable to make an identification at trial." *People v. Lagana*, 36 N.Y.2d 71, 74, 365 N.Y.S.2d 147, 149, 324 N.E.2d 534, 535 (1975).  This change in the law has no bearing on petitioner's claim, since Ms. Olszewski was able to identify petitioner at trial.

130–31.[7] In denying the request, the trial court simply rejected defense counsel's contention that the case contained an identification issue justifying such a charge:

THE COURT: I will not so charge. The witness testified that she looked at the door, and she saw the person running down the street with the radio in her hand, and she chased him.

TR 131.

Petitioner bears an "especially heavy" burden in demonstrating that omission of the requested instruction amounted to constitutional error. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed. 2d 203 (1977). "An omission, or an incomplete [jury] instruction, is less likely to be prejudicial than a misstatement of the law." *Id.; accord Castro v. Sullivan*, 707 F.Supp. 682 (S.D.N.Y.1988) (1988 U.S.Dist. LEXIS 13432).

A habeas claim based upon an omitted jury instruction requires the court to compare "the instructions which were actually given with those that should have been given," *Kibbe*, 431 U.S. at 154, 97 S.Ct. at 1736, in order to determine whether it is "logical to conclude that [the omitted] instruction would ... have affected the[ ] verdict." *Id.*, 431 U.S. at 156, 97 S.Ct. at 1737.

In *Kibbe*, defendants robbed and then abandoned their drunken victim, partly undressed and without his glasses, near an unlighted rural road during a snowstorm. The victim wandered onto the road and was killed by a speeding pickup truck. At trial, the court instructed the jury that to return a verdict of reckless homicide it must find that defendants were *aware of* and *consciously disregarded* a substantial and unjustifiable risk that the victim's death would occur. *Id.*, 431 U.S. at 149. However, the court failed to instruct the jury on the meaning of the statutory element that defendants' reckless conduct must have "caused" the victim's death.

The Supreme Court, after comparing "the instructions which were actually given with those that should have been given,"

*id.*, 431 U.S. at 154, found that the jury's verdict that the defendants were "aware of" and had "consciously disregarded" the risk to their victim necessarily entailed a judgment that the victim's death was "foreseeable." This in turn made it highly unlikely that the jury would have reached a different verdict had it been instructed on the "causation" element. Because it was "logical to assume that the jurors would have responded to an instruction on causation consistently with their determination of the issues that *were* comprehensively explained," the Court held that it was "equally logical to conclude that such an instruction would not have affected their verdict." *Id.*, 431 U.S. at 156 (emphasis added). Thus, "the omission of more complete instructions on the causation issue [could not have] 'so infected the entire trial that the resulting conviction violated due process.'" *Id.*, 431 U.S. at 156–57 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, too, after comparing the instructions actually given with those requested, the court finds it logical to assume that the jury would have responded to the requested instruction on identification testimony "consistently with their determination of the issues that *were* comprehensively explained."

While the trial court did not specifically instruct the jury to consider the lighting in Ms. Olszewski's house and her opportunity to view the intruder, on two occasions it did instruct the jury to consider each witness's means of knowledge or opportunity for observation of the facts. TR 184, 185. Also, the court advised the jury repeatedly that it must make credibility judgments about the witnesses (*see* TR 183–88)—including, of course, Ms. Olszewski—and gave the jury extensive instructions on the state's burden of proving each element of the crimes charged beyond a reasonable doubt, stressing that such doubt must arise from the nature and quality of the evidence. TR 190–94.

---

7. Defense counsel based its request on the identification instructions set forth in *People v. Dan-*

*iels*, 88 A.D.2d 392, 401 n.*, 453 N.Y.S.2d 699, 704 n.* (2d Dep't 1982).

Accordingly, the court finds that omission of the requested instruction could not have "affected the[ ] verdict" and therefore could not have "so infected the entire trial that the resulting conviction violated due process." *See Roman v. Scully*, No. 87 C 4005, 1988 WL 140688 (E.D.N.Y. Dec. 8, 1988) (1988 U.S. Dist. LEXIS 14906) (no constitutional error in omitting instruction on how to weigh identification testimony where state court instructed jury that credibility of identification witness was for jury to determine upon consideration of all circumstances under which identification was made, including opportunity to view and witness's power of observation); *United States ex rel. Winfield v. Cascles*, 403 F.Supp. 956, 958–59 (E.D.N.Y.1975) (no constitutional error in failing to instruct jury on fallibility of eyewitness identifications where state court instructed jury on its duty to determine credibility of witnesses, and gave standard instructions on reasonable doubt, burden of proof, presumption of innocence, etc.).

Because the court finds that neither the state court's *Trowbridge* ruling nor its refusal to give the requested instruction even approached a constitutional violation, it also concludes that the combined effect of these rulings also did not render petitioner's trial fundamentally unfair. Accordingly, this claim is denied, with prejudice.

### CLAIM THREE: CROSS-EXAMINATION REGARDING PRIOR SIMILAR CRIMES

■ Petitioner claims that his due process rights were violated by the trial court's denial of a *Sandoval* hearing. Under *People v. Sandoval*, 34 N.Y.2d 271, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), a New York trial judge "may ... make an advance ruling as to the use by the prosecutor of prior convictions or proof of the prior commission of specific criminal, vicious or immoral acts for the purpose of impeaching a defendant's credibility[.]" *Id.*, 34 N.Y. 2d at 374, 357 N.Y.S.2d at 853, 314 N.E.2d

at 416. In "rare instances," in the trial judge's discretion, an evidentiary hearing may be ordered. *Id.*, 34 N.Y.2d at 375, 357 N.Y.S.2d at 854, 314 N.E.2d at 416. The decision to limit the use of evidence of prior acts is "committed principally to the reviewable discretion of the trial court" and requires that "a balance ... be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant[.]" *Id.*, 34 N.Y.2d at 375, 357 N.Y.S.2d at 854, 314 N.E.2d at 416–17.

Petitioner claims that the trial court's denial of a *Sandoval* hearing enabled the prosecutor to make improper use of his prior convictions—about which defendant himself testified on direct examination (TR 101–03)—by engaging in a line of cross-examination which suggested that petitioner had a propensity to attack and rob unaccompanied women. *See* TR 121–23. Under *Sandoval*, this line of cross-examination probably was improper. "[C]ross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility." *Id.*, 34 N.Y.2d at 377, 357 N.Y.S.2d at 856, 314 N.E.2d at 418.

However, the court finds that petitioner has not stated a cognizable federal constitutional claim warranting habeas relief.[8] "[T]he admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." *Jenkins v. Bara*, 663 F.Supp. 891, 899 (E.D.N.Y.1987) (denying habeas claim based on trial

---

8. Indeed, it appears that under Fed.R.Evid. 609(a), a federal court would have had the discretion to permit the cross-examination complained of here. *See Newton v. Fogg*, 79 Civ. 1695 (S.D.N.Y. Oct. 7, 1979) (LEXIS, Genfed

library, Dist. file) (prior conviction evidence which would have been admissible under Rule 609 did not render state trial fundamentally unfair).

court's ruling, following *Sandoval* hearing, that certain prior convictions could be used for impeachment). Here, petitioner "has merely asserted that the introduction of prior criminal act evidence was improper, without linking the introduction of the evidence to either a constitutionally protected right or evidence that the introduction of the prior acts called into question the integrity of the ultimate fact-finding mission." *Tyson v. Lord,* No. 84 Civ. 7023 (S.D.N.Y. May 22, 1985) (LEXIS, Genfed library, Dist. file) (denying habeas claim based on trial court's *Sandoval* ruling permitting prosecutor to cross-examine defendant regarding past robberies similar to that charged at trial).

Because petitioner has not demonstrated that the trial court's *Sandoval* ruling was an error of "constitutional magnitude," *Jenkins,* 663 F.Supp. at 899, this claim must be denied with prejudice.

### Conclusion

The petition is denied in its entirety, with prejudice.

The court also denies petitioner's application for a certificate of probable cause to appeal pursuant to 28 U.S.C. § 2253, because the petition does not present "some question deserving appellate review." *Alexander v. Harris,* 595 F.2d 87 (2d Cir. 1979). More specifically, the court finds that petitioner has not shown that (1) the issues presented are debatable among reasonable jurists; (2) a court could resolve the matter in a different manner; or (3) the questions presented are adequate to deserve encouragement to proceed further. *De Leon v. Scully,* 674 F.Supp. 133, 134 (S.D.N.Y.1987) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4 (1983)). *See also Robinson v. Scully,* 683 F.Supp. 941, 944 (S.D.N.Y.1988) (denying application for certificate of probable cause where petition "present[ed] no question of substance for appellate review").

SO ORDERED.