Dexter L. CLARK, Petitioner,

v.

Frank E. IRVIN, Superintendent; The Department of Correctional Services, Respondents.

No. 91–CV–1352.

United States District Court, N.D. New York.

Feb. 23, 1994.

See also 169 A.D.2d 848, 564 N.Y.S.2d 567.

901

Dexter L. Clark, pro se.

G. Oliver Koppel, Atty. Gen. of the State of NY, Darren O'Connor, Asst. Atty. Gen., Albany, NY, for respondents.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

This petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, was transferred from the United States District Court for the Western District of New York to the District Court for the Northern District of New York by the Honorable John T. Elfvin on November 18, 1991. Upon trans-

fer, this petition was referred to the undersigned by Senior Judge McCurn. The parties, in accordance with 28 U.S.C. § 636(c), consented to proceed before the undersigned. The consent and order of reference to proceed before a United States Magistrate Judge was signed on March 9, 1992, by Senior Judge McCurn.

## FACTS

Petitioner was charged with, and later indicted by an Albany County Grand Jury for, the crimes of sexual abuse in the first degree in violation of New York Penal Law section 130.65(1), and robbery in the third degree in violation of New York Penal Law section 160.05. The events leading to petitioner's indictment and subsequent ·conviction occurred on December 4, 1987, at approximately 10:00 a.m. on Steuben Street, between James Street and North Pearl Street, in the City of Albany. Petitioner followed, and then robbed Laurie Prediger just as she entered her parked car. During the crime petitioner forced the victim onto the passenger seat and threatened her with injury if she did not give him her money. After taking several items from the back seat of the car, petitioner exited the car and ran up Steuben Street toward North Pearl Street. The victim immediately gave chase while screaming for help. Although she did not see his face, the victim testified that she never lost sight of petitioner as she ran after him.

As petitioner fled the crime scene, he was tackled by a passerby, Kevin Koscielniak, who testified that he saw petitioner leave the car and run up the street. Koscielniak's testimony was corroborated by that of Arthur Smuckler, who helped to detain petitioner. Several items fell from petitioner's arms as he was tackled. These items—including a wallet, credit cards, cosmetic case, and a glasses case—were later identified as belonging to the victim.

Petitioner was indicted on December 23, 1987, and arraigned on December 28, 1987, at which time he pled not guilty to the charges. After an assignment of new counsel and several adjournments to allow defense counsel sufficient time to prepare the defense, petitioner was tried on November 3, 1988.[1] On November 7, 1988, the jury returned a guilty verdict on the robbery charge, but deadlocked on the charge of sexual abuse. On December 19, 1988, Judge Harris determined that petitioner should be sentenced as a persistent felony offender. On January 29, 1989, petitioner was sentenced to an indeterminate term of twenty-five years to life imprisonment.

## PROCEDURAL HISTORY

Petitioner moved the trial court to vacate judgment pursuant to N.Y.Crim.Pro.L. § 440.10 based on the allegations that: (1) prior to the entry of judgment, material evidence adduced from the trial was false and was known by the state to be false; (2) improper and prejudicial conduct, including the Allen charge, and otherwise not appearing in the record, occurred during the trial; and (3) newly discovered evidence, if admitted, might have resulted in a verdict favorable to petitioner. On January 22, 1990, the trial court denied the motion, but granted petitioner leave to appeal to the Appellate Division.

In his appeal to the Appellate Division, Third Department, petitioner raised the following issues for review:

1. ·The court erred in its Sandoval ruling, chilling defendant from testifying in his own behalf and depriving him of a fair trial.

2. The evidence presented at the trial was legally insufficient to sustain a conviction.

3. The defendant was deprived of his right to a speedy trial.

4. The defendant is entitled to a new trial, and his conviction should be vacated, on the basis of newly discovered evidence.

5. The verdict was inconsistent and was coerced by the court's Allen charge.

---

1. The New York State Supreme Court (Harris, J.), on September 30, 1988, denied petitioner's motion to dismiss the case for violation of his right to a speedy trial.

6. The sentence was excessive and should be vacated.

*People v. Clark,* 169 A.D.2d 848, 564 N.Y.S.2d 567 (3d Dept.1991). In an opinion by Judge Casey dated January 3, 1991, the Appellate Division affirmed both the conviction and the denial of petitioner's motion to vacate judgment. *Id.* Petitioner's subsequent motion for re-argument was denied on March 13, 1991, and his application for leave to appeal to the New York Court of Appeals was denied on May 16, 1991. *People v. Clark,* 77 N.Y.2d 993, 575 N.E.2d 405, 571 N.Y.S.2d 919 (1991). Petitioner's writ of certiorari to the United States Supreme Court was denied on October 7, 1991. *Clark v. New York,* — U.S. —, 112 S.Ct. 148, 116 L.Ed.2d 114 (1991).

On November 12, 1991, petitioner filed the instant writ of habeas corpus in the District Court for the Western District of New York. In his petition, with the exception of the sentence being excessive, the petitioner raised essentially the same grounds as those raised before the Appellate Division, but in addition, claimed that: (1) material evidence adduced at trial was false and, prior to judgment, was known to the prosecution as such, and (2) that improper and prejudicial conduct not appearing in the record occurred during the trial. (Pet. 7).

## DISCUSSION

### 1. *Trial Court's Sandoval Ruling.*

■ Petitioner claims that the trial court's improper ruling at the Sandoval hearing prevented him from testifying on his own behalf, and thus deprived him of a fair trial.

"[T]he admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature."

*Jenkins v. Bara,* 663 F.Supp. 891, 899 (E.D.N.Y.1987) (citing *Gilmore v. Curry,* 523 F.Supp. 1205, 1208 (S.D.N.Y.1981)); *see also Ayala v. Hernandez,* 712 F.Supp. 1069, 1077 (E.D.N.Y.1989) (Sandoval ruling is evidentiary in nature). Errors of evidentiary ruling must be "so pervasive as to have denied [defendant of] a fundamentally fair trial" before federal habeas corpus relief will lie. *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir. 1985). "The category of infractions that violate 'fundamental fairness' is narrowly defined." *Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990)).

■ Under New York state law, a trial court has the discretion in determining whether to allow the cross-examination of a defendant's prior convictions and bad acts. *People v. Sandoval,* 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974). During the Sandoval hearing, the trial court carefully considered the probative and prejudicial effects of each of petitioner's acts and disallowed three of the five prior acts presented by prosecution. (T. 14–29). Of the prior acts that the court would allow cross-examination in the event that petitioner took the stand, they were highly relevant to the issue of credibility.[2] Thus, not only was there no error as to the judge's Sandoval ruling, but also the alleged error clearly did not rise to a constitutional level such that federal habeas corpus relief should lie. Accordingly, petition for habeas corpus relief based on this ground is denied.

### 2. *The evidence was legally insufficient to sustain a conviction.*

■ The petitioner next claims that his conviction was legally insufficient as there

---

**2.** In the event that petitioner took the stand, Judge Harris would have allowed cross-examination as to a guilty plea of robbery in the first degree and misconduct while incarcerated. With regard to the robbery charge, petitioner, on August 24, 1977, forcibly robbed a 60–year old man, stabbed him in the back with a knife, and locked him in the trunk of a car that was parked in an abandoned lot. (T. 17–18). While incarcerated for this crime, petitioner was found to have manufactured a homemade weapon consisting of razor blades attached to a handle. (T. 18–

19). Judge Harris found that these acts were probative on the issue of credibility, not remote in time, indicative of petitioner's tendency to elevate his interests over that of society, and were not otherwise overly prejudicial. (T. 27–28). The prior acts as to which Judge Harris would not allow cross-examination were: (1) a guilty plea to a charge of grand larceny for a "purse snatch" in 1973; (2) a misdemeanor for driving without a license and resisting arrest in 1975; and (3) assaulting a corrections officer while petitioner was incarcerated.

was reasonable doubt as to the identification of petitioner as the assailant. Petitioner bases this claim largely on the victim's testimony that she did not see the assailant's face during the struggle in her car. (Pet. 5; Petr's Reply 5–7).

█ In a federal habeas corpus review, the court is not to determine whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather whether the trier of fact could rationally have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979). The evidence should be viewed as a whole in "the light most favorable to the government." *United States v. Salerno*, 868 F.2d 524, 530 (2d Cir.1989), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989) (quoting *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir.1986)); *see also United States v. Carson*, 702 F.2d 351, 362 (2d Cir.1983), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). The conviction must stand if "*any* rational trier of fact could have found the essential elements of the crime." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original). Thus, the *Jackson* standard places a heavy burden on the petitioner attacking a conviction on the ground that there is insufficient evidence to support the verdict. *United States v. Gaviria*, 740 F.2d 174 (2d Cir.1984). Furthermore, issues of witness credibility are reserved for the jury and may not be redetermined by the court in a habeas corpus proceeding. *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

Although the victim testified that she did not see the assailant's face during the struggle, a rational trier of fact could have found beyond a reasonable doubt the essential elements of robbery in the third degree. First, the incident took place at approximately 10:00 a.m., a time when visibility was not significantly impaired,[3] and the victim immediately chased after the assailant never losing sight of him for the short distance that he ran. Second, Koscielniak observed the crime

unfold before he tackled petitioner, and Koscielniak's testimony was corroborated by the testimony of Smuckler, who was at the scene and helped to detain petitioner. Furthermore, these testimonies were supported by evidence obtained at the scene—the victim's wallet, credit cards, cosmetic case, and a glasses case that fell out of petitioner's arms as he was tackled. More important, the victim and witnesses were subject to cross-examination by petitioner's counsel. Thus, the credibility of the above testimonies, including the victim's and witnesses' ability to correctly identify petitioner as the assailant, was considered by the jury after petitioner had the full opportunity to cross-examine the witnesses. Viewing the above as a whole, this court finds that a rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime—Robbery in the Third Degree.

### 3. *Right to a speedy trial.*

█ Petitioner asserts that because 332 days had elapsed from the date of the complaint to the date when his trial commenced, he was denied the constitutional right to a speedy trial. (Pet. 6; Petr's Reply 7–9).

"The right of an accused to a speedy trial is guaranteed by the Sixth Amendment, U.S. Const. amend. VI, and is imposed upon the states by the due process clause of the Fourteenth Amendment." *Rayborn v. Scully*, 858 F.2d 84, 88 (2d Cir.1988), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989). The Supreme Court has articulated the following factors which courts should consider in determining whether a defendant's right to a speedy trial was denied: (1) the length of delay; (2) the reason for the delay; (3) the defendant's responsibility to assert this right; and (4) the prejudice to the defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). These are "related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193. However, the "length of delay is to some extent the triggering mechanism." *Id.* at

---

**3.** Although the record shows that on December 4, 1987, the weather was overcast and the ground was wet, there was no indication that visibility was in any way impaired. (T. 96, 111).

530, 92 S.Ct. at 2192. "Only if the delay is substantial are the other factors brought into play." *Rayborn,* 858 F.2d at 89.

In the instant case, the criminal complaint was filed on December 4, 1987, and the trial commenced on November 3, 1988. Thus, petitioner was not tried until approximately eleven months after the complaint was filed. In light of the crimes that petitioner was charged with—sexual abuse in the first degree and robbery in the third degree—the elapse of eleven months from the time of complaint to time of trial is not substantial. *See United States v. McGrath,* 622 F.2d 36 (2d Cir.1980) (24 months was considerably shorter than other cases in which no Sixth Amendment violation has been found); *United States v. Vasquez,* 918 F.2d 329 (2d Cir. 1990) (26 month delay between arrest and trial did not violate defendant's right to a speedy trial).

■ Even if the court were to assume that the delay was substantial, it should be noted that the prosecution first announced its readiness for trial on December 28, 1987—23 days after the complaint. On nine subsequent occasions the prosecution announced on record its readiness for trial. (Resp't Mem. 3, 11; S. 34–36). Due to petitioner's application for writ of habeas corpus based on ineffective counsel, new counsel was assigned on June 24, 1988, and a new trial date was set for July 25, 1988. The trial, subsequently adjourned to allow petitioner's counsel time to prepare the defense, did not commence until November 3, 1988. Because the delay was not attributable to the prosecution, and there is no indication that the prosecution deliberately delayed the trial, petitioner was not denied his right to a speedy trial.

■ The right of a defendant to a speedy trial is also rooted in preventing prejudice to the defendant's ability to adequately prepare his case. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Although "a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, ... courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." *Ray-*

*born,* 858 F.2d at 94 (citing *United States v. Mitchell,* 769 F.2d 1544, 1547 (11th Cir. 1985)).

■ In the instant case, petitioner has neither shown that he was prejudiced by the elapse of eleven months from complaint to trial, nor is the court able to find any prejudice to petitioner resulting from the elapse. Petitioner was not hindered from calling witnesses or preparing his defense. Nor was petitioner's ability to cross-examine the prosecution's witnesses affected by the elapse. Thus, even assuming that the delay was substantial so as to require a balancing of the factors articulated in *Barker,* the court finds that the delay was largely caused by petitioner; but more important, the delay did not result in any prejudice to petitioner.

### 4. *Inconsistent verdict coerced by the Allen charge.*

■ Petitioner contends that his conviction on the robbery charge and the mistrial on the sexual abuse charge were inconsistent verdicts that resulted from the trial court's coercive Allen[4] charge. (Pet. 6; Petr's Reply 9–10).

■ Inconsistent jury verdicts, even when simultaneously rendered, are the jury's prerogative. *United States v. Zane,* 495 F.2d 683, 690 (2d Cir.1974), *cert. denied,* 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974). "[C]onsistency in jury verdicts is not required." *Id.* (citing *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), and *Steckler v. United States,* 7 F.2d 59 (2d Cir.1925)). Thus, "[i]nconsistent jury verdicts rendered at the same time do not normally constitute grounds for reversal." *United States v. Citron,* 783 F.2d 307, 312 (2d Cir.1986) (citing *Zane,* 495 F.2d at 690; *see also Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981)).

In the present case, petitioner was convicted on the robbery charge, but a mistrial was declared as to the charge of sexual abuse in the first degree. Given that the elements of the above crimes are distinctly different, the verdicts relative to these charges are not

---

4. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

necessarily inconsistent. Even if the verdicts are inconsistent, they were duly reached by the jury, and are therefore not a ground for· habeas corpus relief.

■ Petitioner further contends that the Allen charge coerced the jury into rendering inconsistent verdicts, and had the judge not exercised such coercion, the jury may have found differently. (Pet. 6; Petr's Reply 9–13).

■ Federal habeas corpus review of jury instructions given by state courts is limited to those of a constitutional magnitude. *Estelle,* —— U.S. at ——, 112 S.Ct. at 482 (citing *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). Therefore, habeas corpus relief may only be granted based on instructions given to the jury, if it is "established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In determining whether the jury instruction violated the federal constitution, the instruction must be viewed as a whole. *Boyd v. United States,* 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857 (1926).

In the instant case, the record shows that the Allen charge was balanced and did not give rise to any violation of a constitutional magnitude. *See Allen,* 164 U.S. 492, 17 S.Ct. 154; *see also United States v. Ruggiero,* 928 F.2d 1289, 1299 (2d Cir.1991) (repeated Allen charge not regarded as inevitably coercive). After two hours and twenty minutes of deliberation, the jury sent a note indicating that it had reached a verdict as to one count, but was deadlocked as to the other. (T. 214). Having conferred with defense counsel and the prosecution, the judge issued an Allen charge emphasizing the importance that the jurors should not agree on a verdict that they do not consider just, and that they need not reach a verdict as to both counts. (T. 219–223). The jury was further instructed that it

resume deliberation on the entire case and not only on the count for which they had not reached a verdict. (T. 223). Approximately one and one-half hours later, the jury sent another note to the judge indicating that it had "no progress and there is no movement toward making a decision" (T. 224), but that it had a "unanimous decision *still* on the one count." (T. 224) (emphasis added). At this point, the jury was sent to dinner. Deliberation continued for over an hour after dinner before the jury sent a third note to the judge indicating that "[f]or the last three plus hours of deliberation we have voted at least six times with the identical results. All opinions are now firmly held and there have been no individual changes in votes.... *As before, we still have a unanimous verdict on one count.*" (T. 226–227) (emphasis added). The jury was then individually polled as to whether further deliberation would help to resolve the one count for which it had not reached a verdict. In response to the poll, the jurors all replied in the negative. (T. 232–234).

Given the above, petitioner's contention that the jury may not have found him guilty of robbery in the third degree had the judge not coerced the jury into further deliberation—is meritless. As indicated by the second and third notes to the judge, the jury did not alter its decision regarding petitioner's guilt on the charge of robbery even after they were twice asked to continue deliberating. Thus, there is no reason to believe that the Allen charge had any affect on the verdict. Accordingly, habeas corpus relief based on this ground is denied.

### 5. *Newly discovered evidence.*

■ Petitioner claims that in an interview with a local newspaper, two of the prosecution's witnesses—Kevin Koscielniak and Arthur Smuckler—represented that "they did not know what the ... assailant looked like or what he was wearing." [5] (Pet. 7–A). Petitioner contends that the statements

---

**5.** Although petitioner claims that Stephen Leon, the managing editor of Metroland News, spoke with both Kevin Koscielniak and Arthur Smuckler, the note from Mr. Leon to petitioner indicated that Mr. Leon spoke with Smuckler only.

Furthermore, the attached copy of Mr. Leon's handwritten notes does not show that he interviewed Koscielniak. Therefore, the court will address the claim of newly discovered evidence as it pertains only to Smuckler's testimony.

amounted to newly discovered evidence that warrants a new trial. (Petr's Reply 11–13).

In order for a new trial to be granted based on newly discovered evidence, petitioner must show that "the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." *United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980) (citations omitted); Fed.R.Crim.P. 33. "This principle presupposes ... that the proffered new 'evidence' would be admissible at the new trial." *United States v. Parker,* 903 F.2d 91, 103 (2d Cir.1990). In determining whether to grant a new trial, the district court must exercise great caution "and may grant the motion only 'in the most extraordinary circumstances.'" *United States v. Gordils,* 982 F.2d 64, 72 (2d Cir.1992) (quoting *United States v. Fassoulis,* 203 F.Supp. 114, 117 (S.D.N.Y.1962)); *see also United States v. Imran,* 964 F.2d 1313 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992); *United States v. Stofsky,* 527 F.2d 237, 242 (2d Cir.1975). Thus, evidence that would merely impeach a witness may not be sufficient to warrant a new trial.

The "evidence" proffered by petitioner is primarily statements allegedly made by Smuckler to Stephen Leon describing the incident. Petitioner in turn learned of these statements through Leon. Thus, these statements would be double hearsay and inadmissible at trial. Furthermore, the evidence offered is not "newly discovered." The evidence proffered by petitioner amounts to alleged recantation tending to show that Smuckler may not have accurately identified petitioner as the assailant. In part, the notes read as follows:

Although he [Smuckler] did not see it, said "This man was in the back of her car when she got into it."

"All I saw was him running [with] her stuff in his hand."

[H]ad "all the paraphernailia [sic] from her pocketbook." When they tackled him it went all over the ground.

Thus, in the same notes from Leon to petitioner are statements by Smuckler that are consistent with his testimony as corroborated by the victim's and Koscielniak's testimonies. The credibility of Smuckler's testimony, including his ability to correctly identify petitioner as the assailant, was raised by defense counsel and weighed by the jury in reaching its verdict. (T. 96–103). Therefore, it is highly doubtful that, even if admitted as newly discovered evidence, the proffered evidence would lead to an acquittal. *See United States v. Spencer,* 4 F.3d 115, 119 (2d Cir. 1993); *United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). Accordingly, petitioner's motion for a new trial based on newly discovered evidence is denied.

### 6. *Prosecution's knowing use of false testimony.*

Petitioner complains that the prosecution knowingly used false testimony during the trial. Petitioner's claim is based on the grounds that: (1) although he had been drinking that morning, this was not noted in the police report; (2) evidence presented to the jury showed an "afro pick" even though petitioner did not possess any "afro pick"; and (3) although the victim stated to the police that the assailant wore a brown coat, she later testified that the assailant wore a green coat. (Pet. 7–A; Petr's Reply 13–16).

The use of "known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (citing *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935)). "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Mills v. Scully,* 826 F.2d 1192, 1195 (2d Cir.1987) (quoting *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). However, the use of, or the failure to correct, false testimony does not rise to the level of a constitutional violation "unless it can be said that there was a reasonable likelihood that the testimony affected the judgement of the jury or that it may have had an effect on the

outcome of the trial." *Mills,* 826 F.2d at 1195 (citing *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766, *Napue* 360 U.S. at 271, 79 S.Ct. at 1178, and *United States v. Petrillo,* 821 F.2d 85 (2d Cir.1987)).

Although petitioner claims that he had been drinking and this fact was not noted in the police record, it is not clear how this might have affected the judgment of the jury or how it would have affected the outcome of the trial, since this matter was not raised by either the prosecution or the defense at trial. Likewise, petitioner alleges that the evidence shown to the jury included an "afro pick" even though he did not own one. Exhibit 4, a photograph, was introduced to show the victim's belongings scattered on the street after petitioner was tackled. (T. 71–73). However, there was no mention of any "afro pick" during the trial, nor was there any attempt to link petitioner to the alleged "afro pick." Thus, petitioner's allegation that the prosecution used false evidence is meritless.

 Petitioner further points out that although the victim stated that her assailant wore a brown coat, she later testified that the assailant wore a green coat. Petitioner contends that this amounted to the use of false testimony warranting a new trial.

Although the victim's testimony was inconsistent with her earlier statement to the police that the assailant wore a brown coat, the prosecution had no reason to doubt the truthfulness of the victim's testimony. First, the victim's statement to the police was made when she was in a state of shock. (T. 93, 110). Second, the victim's testimony was corroborated by the testimony of Koscielniak and Smuckler and by evidence obtained from the scene—the items that fell from petitioner's arms as he was tackled. Thus, any inconsistency between the victim's testimony and her earlier statements are inconsequential regarding the credibility of her identification of petitioner as the assailant.

The issue of identification was fully explored by defense counsel[6] (T. 96–103, 114–115, 153–167), and the jury clearly had the benefit of both the prosecution's and defense's presentations as to this issue. Thus, it is highly doubtful that the victim's testimony, even if false, affected the judgment of the jury or that it may have had an effect on the outcome of the trial.

### 7. *Improper and prejudicial conduct not appearing on the record.*

Finally, petitioner contends that improper and prejudicial conduct occurred during the trial. Specifically, petitioner alleges that the trial court's Sandoval ruling was prejudicial and outweighed any probative value that his prior acts may have. (Pet. 7–A; Petr's Reply 16–18).

To the extent that petitioner bases his claim for habeas corpus relief on the trial court's Sandoval ruling, this court has found that "not only was there no error as to the judge's Sandoval ruling, but also the alleged error clearly did not rise to a constitutional level such that federal habeas corpus relief should lie." (*Supra* at 903–904). Petitioner does not otherwise present any other grounds or substantiating facts that improper and prejudicial conduct took place during the trial. Accordingly, habeas corpus relief based on alleged improper and prejudicial conduct is denied.

### CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is **DENIED.** Therefore, the Clerk is hereby

ORDERED to:

1. Enter judgment accordingly;

2. Serve a copy of this Memorandum–Decision and Order, and the Judgment, by regular mail, upon the parties to this action; and

3. Return the state court records directly to the office of the Assistant Attorney General. He has agreed to make them available for any appellate review.

Pursuant to 28 U.S.C. § 636(c)(3), any appeal from this order must be taken to the

---

**6.** Although defense counsel had full opportunity to cross-examine the victim regarding the inconsistency between her statement to the police and her testimony, he chose not to cross-examine her.

United States Court of Appeals for the Second Circuit. In accordance with 28 U.S.C. § 2107, a Notice of Appeal must be filed within thirty days after entry of this order.

IT IS SO ORDERED.